## PEOPLE v. RUPPUHN

1. WITNESSES—CRIMINAL LAW—DEFENDANT TESTIFYING—PRIOR AR-
RESTS—IMPEACHMENT.

The rule that the prosecution cannot impeach a defendant's
credibility by questioning him about his arrests which did not
result in convictions does not apply retroactively to trials
completed before it was decided because it affects trial pro-
cedure, not the integrity of the fact-finding process itself.

2. WITNESSES—CRIMINAL LAW—DEFENDANT TESTIFYING—CREDIBIL-
ITY—DEFENDANT'S CHARACTER.

Permitting the prosecutor, on rebuttal, to comment on the de-
fendant's character and to read to the jury the defendant's
criminal record was not error where the comments were made
only after the defense had raised the issue of whom the jury
should believe and had attacked the credibility of the prose-
cution's witnesses.

3. RAPE—EVIDENCE—ARGUMENTS OF COUNSEL—PROSECUTOR'S COM-
MENTS.

Allowing the prosecutor to comment, during closing argument,
that complainant's hairpiece and blood were found at the scene
of rape was not error, even though the hairpiece had not
been entered into evidence, where there had been testimony
concerning the complainant's hairpiece and blood at the scene
of the crime and where the comments did not prejudice the
defendant's right to a fair trial.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Witnesses § 754 et seq.
[2]  58 Am Jur, Witnesses § 870.
[3]  44 Am Jur, Rape § 121.
[4]  21 Am Jur 2d, Criminal Law §§ 349–354, 360.
[5]  21 Am Jur 2d, Criminal Law §§ 357, 368.
[6]  21 Am Jur 2d, Criminal Law §§ 357, 367, 449.
[7]  53 Am Jur, Trial §§ 671, 824–835.
[8]  53 Am Jur, Trial §§ 286, 796–802.

4. CRIMINAL LAW—INCRIMINATING STATEMENTS—VOLUNTARINESS.

Statements made by the defendant during custody and after he had been advised of his constitutional rights and had stated that he did not want to answer any questions were admissible where the statements were volunteered without prompting or questioning.

5. CRIMINAL LAW—INCRIMINATING STATEMENTS—VOLUNTARINESS.

Statements of the defendant, while in custody and after he had been advised of his rights, that a cigarette lighter and a pair of prescription trifocal glasses belonged to him and his father, respectively, made in response to a police officer's statement "I have a cigarette lighter and a pair of prescription trifocal glasses that one of the girls gave me that jumped out of the truck" was admissible in the defendant's trial for rape and kidnapping even though the defendant had told the police that he did not want to answer any questions because the defendant's statement was made without prompting or questioning.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—ADVICE OF RIGHTS—SUFFICIENCY.

The arresting officer's warning to the defendant that anything he said could be used against him sufficiently complied with a federal decisional rule that an accused must be advised that anything he says can and will be used against him in court.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY.

A defendant in a criminal trial has the right to a properly-instructed jury even though he did not object to the instructions given.

8. CRIMINAL LAW—LESSER INCLUDED OFFENSES.

Requiring the jury, which had already returned a verdict of guilty on rape and kidnapping charges, to reach a verdict on lesser included offenses was not reversible error where the record failed to show that defendant was prejudiced by the procedure.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 April 15, 1970, at Lansing. (Docket No. 8,371.) Decided June 26, 1970.

Gary James Ruppuhn was convicted of rape and kidnapping. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Parvin Lee,* for defendant on appeal.

Before: R. B. BURNS, P. J., and FITZGERALD and VANDOMELEN,* JJ.

R. B. BURNS, P. J. Defendant was convicted by a jury of rape[1] and kidnapping.[2]

Complainant was with a group of hitchhiking girls picked up by the defendant. The other girls escaped from the truck but the complainant failed in her attempt to escape.

Defendant and complainant had sexual intercourse. Defendant maintained the complainant consented to the act while she testified that the defendant forced her to submit to the act.

Defendant raises several issues on appeal which he claims constituted error requiring a new trial.

Defendant claims the court erred by allowing the prosecution to question him concerning previous arrests that did not result in convictions. The trial court relied on *People v. Foley* (1941), 299 Mich 358, and *People v. Hoffman* (1965), 1 Mich App 557.

In *People v. Brocato* (1969), 17 Mich App 277, Judge JOHN GILLIS who concurred in *People v. Hoffman, supra,* confessed that he was wrong, had misread *People v. Foley, supra,* and held that a prosecutor could not ask a defendant about arrests not resulting in convictions to impeach a defendant's credibility. He pointed out that the Supreme Court

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 750.520 (Stat Ann 1954 Rev § 28.788).
[2] MCLA § 750.349 (Stat Ann 1954 Rev § 28.581).

in the *Foley* case allowed questions asked of arrests not resulting in convictions to impeach the defendant's direct testimony, not to impeach her credibility.

However, the *Hoffman* case allowed the prosecutor to ask such questions to impeach the defendant's credibility. This trial took place prior to the decision in the *Brocato* case and the trial judge had a right to rely on *People* v. *Hoffman, supra.*

We must now decide whether or not *Brocato* should be applied retroactively to trials completed before the date of the decision.

In *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199) the Court enumerated the criteria it would use in deciding on retroactivity: (a) the purpose to be shown by the new standard; (b) the extent of the reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standard.

The United States Supreme Court has given retroactive effect to its decisions where the integrity of the fact-finding process itself was in question. *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L Ed 2d 799, 93 ALR2d 733) (right to counsel at trial); *Jackson* v. *Denno* (1964), 378 US 368 (84 S Ct 1774, 12 L Ed 2d 908, 1 ALR3d 1205) (involuntary confessions inadmissible); and *Roberts* v. *Russell* (1968), 392 US 293 (88 S Ct 1921, 20 L Ed 2d 1100) (retroactive application of *Bruton* v. *United States* [1968], 391 US 123 [88 S Ct 1620, 20 L Ed 2d 476] in which admission of codefendant's extrajudicial confession against other codefendant was held to violate the right of confrontation).

The United States Supreme Court did not give retroactive effect to its decisions where such rulings would seriously disrupt the administration of the criminal laws. In *Johnson* v. *New Jersey* (1966),

384 US 719 (86 S Ct 1772, 16 L Ed 2d 882) the
Court refused to apply *Miranda* and *Escobedo* retro-
actively. In *Stovall* v. *Denno, supra,* the Court re-
fused to apply *United States* v. *Wade* (1967), 388
US 218 (87 S Ct 1926, 18 L Ed 2d 1149) and held
*Wade* was to apply only to confrontations after the
date of the *Wade* ruling because "today's rulings
were not foreshadowed".

*Hoffman* was the law before *Brocato* and was
relied on by the trial court. *Brocato* affects trial
procedure and will apply only to those trials which
commenced after the date of this Court's decision
in the case.

Defendant claims the prosecutor committed error
when he commented upon the defendant's character
when the defendant did not place his character in
evidence. The transcript of the final arguments
shows that the prosecution did not attack the char-
acter of the defendant on his first argument. On
rebuttal, after the defense had raised the issue as
to whom the jury should believe and had attacked
the credibility of the prosecution witnesses, the pros-
ecutor said:

"First of all, the testimony of the defendant indi-
cates that here is a man who has been in difficulty
with the law before. Now, that doesn't mean just
because he's been convicted of criminal offenses be-
fore that he's guilty of this crime, but you have to
take that into consideration in judging his believ-
ability, his credibility."

The prosecution proceeded to read his record to
the jury. The defendant put his credibility in issue
and the court did not err in permitting the prose-
cutor to comment on the defendant's record.

Defendant also claims the court erred when it
allowed the prosecutor to mention, during closing
argument, matters not in evidence.

During the closing arguments the prosecutor mentioned the complainant's hairpiece and blood found at the scene of the alleged rape. While the hairpiece was not entered into evidence there was testimony concerning the hairpiece as there was testimony concerning the blood at the scene. These remarks did not prejudice the defendant's right to a fair trial. See *People* v. *Green* (1967), 7 Mich App 346.

Defendant claims the trial court erred when it permitted the arresting officer to testify as to a statement made by the defendant after the defendant had declined to make any statements. On direct examination the officer testified:

"*Q.* And what happened then? [*After defendant was advised of his rights and stated he did not want to answer any questions then*].

"*A.* Well, nobody spoke for a few miles and finally I told Gary, I said, 'I have a cigarette lighter and a pair of prescription trifocal glasses that one of the girls gave me that jumped out of the truck,' and he said the lighter was his and the glasses were his father's.

"*Q.* All right, then what happened?

"*A.* Well, he was quiet for awhile, then Gary asked if I thought he needed psychiatric help, I said, 'I don't know, I would have to confer with the prosecutor.'"

The statement was volunteered by the defendant to the arresting officer, without prompting or questioning. Voluntary statements are allowed as an exception to *Miranda*. *United States* v. *Godfrey* (1969), 409 F2d 1338; *People* v. *Ridley* (1967), 8 Mich App 549.

Defendant also claims the warning given by the police officer was insufficient. He claims the officer advised him that anything he said *could* be used against him, while *Miranda* v. *Arizona* (1966), 384

US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974) requires that defendant be advised that anything he said *can and will* be used against him. A similar warning was given in *People* v. *Bynum* (1970), 21 Mich App 596, and the Court concluded the warning complied with *Miranda.*

Defendant claims the trial court erred by precluding defense counsel from inquiring into the chastity of the prosecutrix. The record shows defense counsel did inquire into the prosecutrix's chastity, and she admitted prior sexual relations.

Defendant also complains that the jury instructions were improper. Even though defendant did not object to the instructions it has been held that defendants have the right to properly instructed juries. *People* v. *Liggett* (1967), 378 Mich 706. A thorough reading of the instructions convinces us that they were fair to the defendant and were not erroneous.

Defendant's last claim of error involves the procedure of the trial judge. After the jury had returned a verdict of guilty on the rape and kidnapping charges, the judge directed the jury to return to the jury room and reach a verdict on the lesser included offenses. We admit an extraordinary procedure was used by the trial court; however, no apparent prejudice to the defendant is evident from the record.

Affirmed.

All concurred.