PEOPLE *ex rel* INGHAM COUNTY PROSECUTOR v EAST
LANSING MUNICIPAL JUDGE

PEOPLE v MAIRE

OPINION OF TARGONSKI, J.

1. APPEAL AND ERROR—ORDER OF SUPERINTENDING CONTROL—DISCRE-
TION.

The grant or denial of an order of superintending control is
within the discretion of the trial court and will be upheld in
the absence of an abuse of discretion (GCR 1963, 711.1).

2. CRIMINAL LAW—PRELIMINARY EXAMINATION—IN-COURT LINEUP.

An order of an examining magistrate requiring an in-court lineup
at the preliminary examination did not exceed the power of the
judiciary by directing and controlling the evidence to be pre-
sented, where the order applied only if the prosecution in-
tended to present in-court identification testimony.

3. CRIMINAL LAW—PRELIMINARY EXAMINATION—IN-COURT LINEUP—
DISCRETION.

An examining magistrate is entitled in his discretion to require
an in-court lineup to assure the reliability of the identification
process, especially where there is a paucity of facts available to
lend reliability to the identification.

4. CRIMINAL LAW—PRELIMINARY EXAMINATION—IN-COURT LINEUP—
LACK OF PRECEDENT.

The absence of authority allowing an examining magistrate to

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 18.
5 Am Jur 2d, Appeal and Error § 774.
[2–7, 9] 21 Am Jur 2d, Criminal Law §§ 442–451.
29 Am Jur 2d, Evidence § 371 *et seq.*
Admissibility of evidence of lineup identification as affected by
allegedly suggestive lineup procedures. 39 ALR3d 487.
[8] Power of successor judge taking office during termtime to vacate,
etc., judgment entered by his predecessor. 11 ALR2d 1117.
[10] 20 Am Jur 2d, Courts §§ 23, 24.

order an in-court lineup at the preliminary examination does not preclude him from ordering such an identification procedure.

5. CONSTITUTIONAL LAW—IN-COURT LINEUP—DISCRETION.

An examining magistrate may require an in-court lineup as a matter of his discretion even though a lineup is not so essential that refusal to arrange one would constitute a denial of due process of law.

6. CRIMINAL LAW—PRELIMINARY EXAMINATION—IN-COURT LINEUP—DUTY OF EXAMINING MAGISTRATE.

Inability of the prosecution's witnesses to identify a defendant at an in-court lineup does not free the examining magistrate from his duty to consider all of the evidence presented at the preliminary examination in determining whether or not a crime has been committed and whether or not there is probable cause to believe the defendant committed the crime.

7. CRIMINAL LAW—PRELIMINARY EXAMINATION—IN-COURT LINEUP—FAIRNESS.

A defendant's ability to employ unfair methods (e.g. shaving his beard) at a required in-court lineup held during the preliminary examination does not threaten the fairness or integrity of the fact-finding process since the prosecution may move at the examination to correct any unfairness and may appeal by leave from any order of the court relative to the proceedings.

8. APPEAL AND ERROR—NONEXISTENT COURTS.

An appeal from an order of a judge who is no longer in office and whose judicial position is no longer in existence will be heard to avoid further delay in processing the claim.

CONCURRENCE BY BRONSON, J.

9. CRIMINAL LAW—PRELIMINARY EXAMINATION—IN-COURT LINEUP—DISCRETION.

*An examining magistrate did not abuse his discretion by ordering an in-court lineup at the preliminary examination since the procedure acts both to protect the defendant and possibly to save the prosecution the necessity of meeting an impossible burden in proving that an in-court identification is untainted.*

DISSENT BY DANHOF, P. J.

10. APPEAL AND ERROR—MUNICIPAL COURTS—DISTRICT COURTS—ORDER OF SUPERINTENDING CONTROL.

*An appeal from the denial of an order of superintending control*

*requested against a municipal judge should be dismissed when the municipal court ceases to exist since the decision of an appellate court does not bind the successor district judge.*

Appeal from Ingham, Donald L. Reisig, J. Submitted Division 2 November 3, 1971, at Lansing. (Docket No. 11077.) Decided July 24, 1972.

Complaint by the People of the State of Michigan, on the relation of the Ingham County Prosecuting Attorney, Raymond L. Scodeller, against Jonathan E. Maire, Associate Municipal Judge for the City of East Lansing, for superintending control to cancel an order of the defendant compelling a lineup at the preliminary examination in a criminal case. Judgment for defendant. Plaintiff appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *James R. Ramsey,* Assistant Prosecuting Attorney, for the people.

*Jonathan E. Maire, in propria persona.*

Before: DANHOF, P. J., and BRONSON and TARGONSKI,* JJ.

TARGONSKI, J. On February 19, 1970, a disturbance, involving hundreds of people moving in masses about the business area, occurred in the City of East Lansing, Michigan. Several plate glass windows were broken and considerable other property in the area was destroyed. As a result, Ralph Albert Bartles was arrested several days later on separate warrants charging (1) malicious injury of property belonging to the City of East Lansing, (2)

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

malicious destruction of personal property belonging to Victor Mittelberg, and (3) assault and battery. A warrant was also issued charging Bartles and one Bradford Lang with malicious destruction of property belonging to Jacobson's Apparels. Both defendants were arrested on this warrant at the same time as the other arrest.

The cases were set for examination before Honorable Jonathan E. Maire, Associate Municipal Judge, the named defendant in these proceedings. Prior to the preliminary examination, the defendants moved, among other things, for an order compelling a lineup prior to the preliminary examination on the charges set forth above. The municipal judge requested enlightenment from the prosecution as to how the defendants had been identified, stating the court would consider these circumstances and the reliability they lent to the identification process in determining the merits of the defendants' requests. The prosecution refused to honor the request. This motion was ultimately granted in these words:

"At the time of the preliminary examination defense counsel may cause to be produced, with regard to each of the accused, two or three other persons from among whom the identifying witness may be required to select when identifying the defendants. It is assumed by the court that the same considerations will guide counsel in the selection of these parties as they would expect to control in a fairly conducted lineup.

"Further, the court will see that the preliminary examinations are scheduled in such a manner as to avoid the presence of witnesses at any examination not intended to be called in connection with that particular examination.

"To insure the attainment of these objectives, the court will require that the parties agree in advance as to the persons to be used in the in-court identification procedure outlined above, and in the event of their

failure to do so, to bring the matter or any other problem in this regard to the attention of the court at the 'pre-examination' conference to be set by the court. Further, the courtroom will be closed, excepting for representatives of the press and those having the prior, express permission of the court, during the examinations."

The people filed a complaint for superintending control[1] alleging among other things that the defendant Bartles had changed his appearance between the time of the offense and the time he surrendered. Two exhibits were attached to the complaint showing the change. No such claim or allegation was made in the municipal court proceedings. However, at the hearing in the circuit court, the attorney for defendant Bartles stipulated that the individual alleged to be Bartles was in fact Bartles.

After the hearing the circuit judge denied the relief prayed for and ordered the examination set within 30 days from the date of the order. Application for leave to appeal was granted February 17, 1971. The defendant in this cause is the associate municipal judge conducting the preliminary hearing in the principal cases.

The grant or denial of a petition for an order of superintending control is within the sound discretion of the trial court and the "denial of an order of superintending control will be upheld * * * in the absence of an abuse of discretion". *LaPratt v Keego Harbor Justice of the Peace,* 1 Mich App 657, 660 (1965). We could summarily dispose of this appeal by our finding that there is no evidence of an abuse of discretion by the trial court. However, we feel it is in the best interests of the

---

[1] GCR 1963, 711.1. "An order of superintending control may be used in any fashion necessary to implement the superintending or supervisory control power of the court over inferior tribunals."

bench and bar to speak with particularity to the specific question raised by the original action of the municipal judge.

The issue involved here is best stated as follows:

May an examining magistrate, in his discretion, require that a "lineup" or "showup" be held at the preliminary examination in order to assist him in determining whether or not there is probable cause to believe that the defendants committed the crime with which they are charged?

The due process clauses of the United States Constitution and the Michigan State Constitution do not require examinations in criminal cases.[2] However, such examinations are statutorily required in Michigan.[3] A preliminary examination is not a judicial inquiry in which the guilt or innocence of the accused is finally determined, but an inquiry to ascertain whether the crime charged has been committed, and, if so, whether or not there is reasonable ground to believe the accused committed it.[4] Furthermore, it is not necessary that the examining magistrate establish guilt beyond a reasonable doubt in order to bind him over for trial.[5] Moreover, the manner in which a pre-

---

[2] See *People v McCrea,* 303 Mich 213 (1942), *cert den,* 318 US 783; 63 S Ct 851; 87 L Ed 1150 (1943).

[3] MCLA 766.4; MSA 28.922, which provides that:

"The magistrate before whom any person is brought on a charge of having committed an offense not cognizable by a justice of the peace, shall set a day for examination not exceeding 10 days thereafter, at which time he shall examine the complainant and the witnesses in support of the prosecution, on oath in the presence of the prisoner, in regard to the offense charged and in regard to any other matters connected with such charge which such magistrate may deem pertinent."

[4] 1 Gillespie, Michigan Criminal Law and Procedure (2d Ed), § 295, pp 348–349. See MCLA 766.13, MSA 28.931 and *People v Sutherland,* 104 Mich 468 (1895); *People v McLean,* 230 Mich 423 (1925); *People v Zaleski,* 375 Mich 71 (1965); *People v Spann,* 3 Mich App 444 (1966); *People v Bean,* 7 Mich App 402 (1967).

[5] See *People v Asta,* 337 Mich 590 (1953); *People v Davis,* 343 Mich

liminary examination is conducted is largely within the sound discretion of the examining magistrate.[6]

The people here on appeal contend (1) that the municipal court's order requiring a lineup to be conducted at the preliminary examination exceeds the power of the judiciary because it directs and controls the evidence to be presented by the prosecution; (2) that there is absolutely no authority requiring in-court identification lineups; (3) that, by entering the order as he did, the examining magistrate abrogated his statutory duty to determine, from all the facts presented by the prosecution, whether or not a crime has been committed and whether or not there is probable cause to believe that the defendant is the person who committed it; and (4) that the lineup procedure which the municipal court ordered threatens the very integrity of the fact finding process.

The plaintiff's first contention is totally without merit. In requiring a lineup to be conducted at the preliminary examination, the court was not directing the prosecutor to present in-court identification testimony. The court merely stated that if the prosecution intended to present in-court identifica-

---

348 (1955); *People v O'Leary,* 6 Mich App 115 (1967); *People v Jackson,* 8 Mich App 643 (1967).

[6] MCLA 766.4; MSA 28.922 and MCLA 766.1; MSA 28.919. See, also, 1 Gillespie, Michigan Criminal Law and Procedure (2d Ed), § 303, p 361:

"While the rules of relevancy applied to the reception of evidence on a trial are not applicable to preliminary examinations, the testimony should be confined to matters fairly within the complaint. The justice should allow a wide range of testimony, and the inquiry should not be limited to the precise time alleged in the complaint. All facts and incidents which plainly relate to the offense are admissible. In many cases the application of strict rules of evidence would go far to defeat the object of the inquiry. The examining magistrate must be allowed a large discretion as to the extent and range of the inquiry. The magistrate does not act judicially in the technical sense, and the proceeding is one which, at common law, was conducted very much at the discretion of the magistrate." (Footnotes omitted.)

tion testimony, then such testimony shall be first screened by an in-court lineup procedure. The preliminary examination is a screening process to test the substance of the state's allegations against the accused as a basis for further proceedings against him. It is not a trial and should be as brief and to the point as the nature of the charge and the intricacies of the matter will permit, but not at the abuse of its two-fold purpose to determine whether or not the offense was committed and whether or not probable cause exists to believe that the defendant was guilty of the commission of that crime.

The examining magistrate is not merely an impartial observer; he has the power and the responsibility to control the proceedings and to see that the evidence presented is within the general bounds of competency, relevancy and materiality. The court is entitled, in its discretion and in its inherent power to control the proofs, to require a procedure which assures the reliability of the identification process especially in a case such as this where there was such a paucity of facts available to lend any reliability to the identification process.

The people's second contention is likewise without merit. The people are quite correct that there is no authority requiring a trial court or an examining magistrate to grant a defendant's motion for an in-court identification lineup. However, the lack of such authority does not conversely lead to the necessary conclusion that the trial court or an examining magistrate is precluded from ordering such an in-court identification lineup. Likewise, the cases[7] which the people cite as authority for the proposition that a defendant is not constitu-

---

[7] *Laury v State,* 260 A2d 907, 909 (Del, 1969); *Moye v State,* 122 Ga App 14, 176 SE2d 180 (1970); *People v Posley,* 71 Ill App 2d 186 (1966), citing *People v Boney,* 28 Ill 2d 505 (1963).

tionally entitled to a pretrial lineup do not support the contention that an examining magistrate may not, in his discretion, order an identification lineup to be conducted at the preliminary examination.

On the other hand, in *United States v Ravich,* 421 F2d 1196, 1203 (CA 2, 1970), the United States Court of Appeals ruled in part that while a lineup is not so essential that a refusal to arrange one would constitute a denial of due process of law:

"[W]e can well see how a prompt line-up might be of value both to an innocent accused and to law enforcement officers. A pretrial request by a defendant for a line-up is thus addressed to the sound discretion of the district court and should be carefully considered." (Footnote omitted.)

Likewise, the Ninth Circuit Court of Appeals in *United States v Williams,* 436 F2d 1166, 1168–1169 (CA 9, 1970), said:

"In cases such as this, where the question of guilt or innocence hangs entirely on the reliability and accuracy of an in-court identification, the identification procedure should be as lacking in inherent suggestiveness as possible. Yet that is often not the case. When asked to point to the robber, an identification witness—particularly if he has some familiarity with courtroom procedure—is quite likely to look immediately at the counsel table, where the defendant is conspicuously seated in relative isolation. Thus the usual physical setting of a trial may itself provide a suggestive setting for an eyewitness identification.

"Because of such potential suggestiveness, some trial judges have granted defense requests to place the defendant in an in-court lineup, or to seat the defendant in the courtroom audience before and during the testimony of the prosecution's identification witnesses. See, *e.g. Allen v. Rhay,* 9 Cir. 1970, 431 F2d 1160;[8] *United*

[8] In *Allen v Rhay,* the United States Court of Appeals ruled in part that "the question of where prospective witnesses should be seated or

*States v. Moss,* 3 Cir. 1969, 410 F2d 386, 387. Such arrangements are desirable efforts to ensure fair trials. But we cannot find any support for the assertion that a defendant has a right to such an arrangement whenever he requests it. Like the seating arrangements for prospective witnesses, *Allen v. Rhay, supra,* at (at 1164 [sic, at 1165]), the procedure for in-court eyewitness identification is left to the trial judge's discretion. Absent abuse of that discretion resulting in procedure 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to amount to a denial of due process of law, *Stovall v. Denno,* 1967, 388 US 293, 302, 87 S Ct 1967, 1972, 18 L Ed 2d 1199 [1206], we should not question the trial judge's ruling." (Footnote added.)

From an examination of the above-quoted authorities, we reach the conclusion that they clearly support the proposition that an examining magistrate, in the exercise of his discretion, may require a lineup to be conducted at the preliminary examination.

The third contention propounded by the people is predicated on the assumption that the in-court identification lineup will control further proceedings. The people are assuming that the examining magistrate would dismiss the case, if the prosecution's witnesses were unable to identify the defendant in the in-court lineup. Such assumption is clearly fallacious as the examining magistrate must consider all of the evidence presented at the preliminary examination in determining whether or not a crime has been committed and whether or not there is probable cause to believe that the defendant committed the crime.[9]

---

held prior to their testimony in court rests in the sound discretion of the trial court." (431 F2d at 1165.)

[9] MCLA 766.13; MSA 28.931 provides:

"*If it shall appear to the magistrate upon the examination of the whole matter,* either that no offense has been committed or that there is not probable cause for charging the defendant therewith, he shall

In any event, the prosecution would be able to
present such other additional testimony or proof
as it may have available to establish the required
probable cause in the event that the witnesses
were not able to identify the defendants through
the process set up by the municipal judge's order.
Defendant in this cause concedes this point in his
brief when he states that he would have to con-
sider "any other independent evidence as to the
relationship of the defendants to the offense
charged".

The people's fourth and final contention, that
the lineup procedure ordered by the municipal
court threatens the very integrity of the fact-find-
ing process, is based primarily upon the argument
that a defendant would be able to employ unfair
methods with respect to in-court lineup procedures
and that the prosecution would not be able to
obtain a remedy. The examining magistrate's or-
der as entered specifically provides that the selec-
tion for the in-court identification lineup would be
according to principles of fairness, and that per-
sons to be used in the identification lineup would
be chosen jointly by the defense and prosecution.
Also, the order provides that the prosecution may
move at the examination in chief to correct any
unfairness which it cannot overcome by agreement
with defense counsel. Further, prosecution may
appeal by leave from any order of the court rela-
tive to admission of evidence or proceedings had or
made at any time before the defendant is put in
jeopardy.[10] Thus it appears abundantly clear that

discharge such defendant. *If it shall appear to the magistrate upon
the examination of the whole matter,* that an offense not cognizable
by a justice of the peace has been committed and there is probable
cause for charging the defendant therewith, said magistrate shall
forthwith bind such defendant to appear before the circuit court of
such county or any court having jurisdiction of said cause, for trial."
(Emphasis added.)

[10] MCLA 770.12; MSA 28.1109.

the people, in fact, do have methods of obtaining relief available to them in the event that a defendant makes unfair use of the in-court identification lineup procedure.

In their application for the writ of superintending control, the people argue that the municipal court's order requiring an identification lineup to be conducted at the preliminary examination, if sustained, will result in undue unfairness to the prosecution because defendant Bartles has purposely altered his appearance since the disturbance occurred in order to make an in-court identification improbable. We deem this argument without merit as the defendant had a right to shave or not to shave and if he has deliberately altered his appearance for the purpose of obstructing justice, then the people have a proper remedy for that fact through other processes. In any event the prosecution did not raise this issue before the municipal court made its disposition of the motion for the in-court identification lineup.

We note particularly that throughout the proceedings the prosecutor was given an opportunity to disclose the means by which the people identified the defendants, Bartles and Lang, prior to their arrests; that these defendants never participated in a lineup; that neither of the defendants has a criminal record which would have provided the prosecutor with "mug shots"; that at no time has the prosecutor been willing to reveal the basis for the people's identification of the defendants; that hundreds of students and young people were involved in the disturbance out of which the present case arises; that the disturbance occurred after sunset on a winter's evening; that the defendants were not arrested until five days after the disturbance; and that defense counsel truly believes that

a number of the complainants listed in the criminal complaint were not even present at the time of the disturbance.

We therefore conclude that there is a substantial doubt that the people can establish an independent identification of either defendant Bartles or defendant Lang and that the municipal court's order requiring an in-court identification lineup was not an abuse of discretion. The people stated in oral argument at the hearing of this appeal that they were unable to make the disclosure to the examining magistrate and comply with the order because of secret undercover agents involved in the investigation of the original charges and that such disclosure would jeopardize the usefulness of such undercover agents. We are very sympathetic to the prosecution's determination to protect the identity of their secret undercover agents in order to protect their usefulness but we find that the same cannot be done at the expense of fairness in the judicial proceedings under the warrants pending against the defendants.

While it is true that the named defendant-judge is no longer in office and his judicial position is no longer in existence, it is necessary that this issue be dealt with for the benefit of those who continue to handle the pending charges against the defendants in the criminal case out of which this action arose. To do otherwise would be to subject those defendants to the further delay in processing the claim against them with resultant loss of time and money. Justice delayed is justice denied. They should not be required to raise the same issue before the successor district judge with the need for a new appeal if the prosecution persists in taking the same position on the question as they did when the matter was originally before this defendant in his then official capacity.

We find no reason to disturb the circuit court's order denying the people's petition for an order of superintending control. Affirmed.

BRONSON, J. *(concurring)*. I concur with Judge TARGONSKI's well-reasoned opinion that under the particular circumstances of this case the trial judge did not abuse his discretion by ordering an in-court lineup procedure.

In *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), the Supreme Court judicially recognized the possibilities of unfairness inherent in previously used identification procedures and attempted to guard against those possibilities. The Supreme Court found that lineups were "riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification." 388 US at 228; 87 S Ct at 1933; 18 L Ed 2d at 1158. The Court in *Wade, supra,* sought to protect against such abuse. I see no difference between a "tainted" out-of-court identification and a "tainted" in-court identification.

Since it is the government's burden to show that its evidence is untainted *(Alderman v United States,* 394 US 165; 89 S Ct 961; 22 L Ed 2d 176 [1969]), in the instant case the procedures outlined by the examining magistrate act both to protect the defendant and to possibly prevent the necessity of the government meeting an impossible burden.

The law books are replete with cases dealing with the difficult question of "tainted" evidence.

Where the question can be avoided by using reasonable procedures, certainly the judiciary should expect no less of itself than it does of police agencies.

Danhof, P. J. *(dissenting).* I must dissent from the opinions of the majority because this matter is no longer a viable judicial matter. The defendant was, at the time of the entry of the disputed order, the Associate Municipal Judge of the City of East Lansing. The order of superintending control was requested by the people at a time when the defendant still held his judicial position.

On January 1, 1971, the Municipal Court for the City of East Lansing ceased to exist, and the defendant resigned his position. The Municipal Court for the City of East Lansing became the second division of the 54th District Court and the Honorable Maurice E. Schoenberger became the district judge. In my opinion the appeal should be dismissed without prejudice to either the people or the defendant to renew their motions before the successor judge. Assuming that the examinations would be continued in the district court, it is my opinion that Judge Schoenberger is not bound by the decisions of the defendant, nor by the opinions of this Court in this case.

My decision herein should not be mistaken as an endorsement of the *obiter dictum* expounded by the majority. If and when the proper case comes before this writer, I shall set forth my views on the powers and duties of the district court regarding preliminary examinations.