PEOPLE v GAINES

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—PURPOSE—PROBABLE CAUSE.

   A preliminary examination serves the limited purpose of a factual presentation from which an examining magistrate determines whether a crime has been committed and whether there is probable cause to believe the accused committed it.

2. CRIMINAL LAW—PRELIMINARY EXAMINATION—PROBABLE CAUSE—EXAMINING MAGISTRATE—DISCRETION.

   An examining magistrate's determination as to probable cause at a preliminary examination will not be disturbed unless an abuse of discretion is found.

3. CRIMINAL LAW—PRELIMINARY EXAMINATION—EXAMINING MAGISTRATE—DISCRETION.

   The manner in which a preliminary examination is conducted is within the sound discretion of the examining magistrate.

4. CRIMINAL LAW—PRELIMINARY EXAMINATION—EXAMINING MAGISTRATE—EVIDENCE.

   An examining magistrate at a preliminary examination has the power and responsibility to control the proceedings, and to see that the evidence presented is within the general bounds of competency, relevancy and materiality.

5. CRIMINAL LAW—JURISDICTION—PRELIMINARY EXAMINATION—EXAMINING MAGISTRATE'S RETURN.

   A circuit court acquires jurisdiction over a criminal defendant upon the filing of a proper return by the magistrate before whom the defendant has either been examined or waived examination.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 53 Am Jur, Trial § 8 *et seq.*
[7] 20 Am Jur 2d, Courts § 85.
  Power of court to prescribe rules of pleading, practice, or procedure, 158 ALR 705.
[8] 21 Am Jur 2d, Criminal Law §§ 143–145.

6. CRIMINAL LAW—PRELIMINARY EXAMINATION—EXAMINING MAGISTRATE.

An examining magistrate's request that the prosecution quantitatively analyze certain exhibits at a preliminary examination is not binding on the circuit court since the examining magistrate lost jurisdiction to enforce his orders upon the filing of his return to the circuit court.

7. COURTS—NEW RULES OF LAW—EFFECTIVE DATE—DISCRETION.

The key factors which have been taken into account in determining the effective date of a new rule of law are the purpose of the new rule, the general reliance on the old rule, and the effect on the administration of justice; there is a large measure of judicial discretion involved in deciding the time from which a new principle of law is to be deemed controlling.

8. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—PROSPECTIVE APPLICATION.

The holding of a Michigan Supreme Court case that the test for entrapment is "objective", is to be applied prospectively.

Appeal from Oakland, Clark J. Adams, J. Submitted Division 2 March 12, 1974, at Lansing. (Docket No. 16193.) Decided May 29, 1974.

John L. Gaines was convicted of selling or dispensing narcotics without a license. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Rimantas A. Rukstele,* Assistant Prosecuting Attorney, for the people.

*Elbert L. Hatchett,* for defendant.

Before: HOLBROOK, P. J., and ALLEN and VAN VALKENBURG,* JJ.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

HOLBROOK, P. J. The defendant, John L. Gaines, was convicted by a jury in Oakland County Circuit Court of selling or dispensing narcotics without a license. MCLA 335.152; MSA 18.1122. The drugs in question were heroin and cocaine. Under the then existing law these drugs were defined as "narcotics". MCLA 335.151(2)(a)(e); MSA 18.1121(2)(a)(e).[1] He was sentenced to 5 to 20 years in state prison.

The defendant had been introduced to an undercover police agent by Margy Pohl, an addict and cooperator, in a Detroit "dope pad". Barry Blackstone, a member of the Oakland County Narcotics Enforcement Team, was informed by the cooperator that the defendant was a dealer in narcotics. Phone numbers were exchanged between Blackstone and the defendant. Blackstone indicated to the defendant that he wished to purchase drugs from him.

Pursuant to a telephone conversation of December 20, 1971, an alleged sale of heroin transpired between the defendant and Blackstone at Northland Shopping Center in Oakland County on that date. The alleged value of the drugs purchased was $100. Later in that month, Blackstone again telephoned the defendant and attempted to purchase a large quantity of heroin. He was allegedly informed by the defendant that defendant could provide him only with $500 worth of heroin and $250 worth of cocaine. The two met again at the Northland Shopping Center and a transaction took place. Defendant was arrested and charged with the sale of heroin and cocaine.

The defense was one of coercion. The defendant asserted that he had supplied drugs to Blackstone because he was told by him that if he didn't, he

---

[1] This case arose before the effective date of the Controlled Substances Act of 1971. MCLA 335.367; MSA 18.1070(67).

would go to jail. The defense further asserted that the defendant had been entrapped.

I

Whether the failure of the prosecution to conduct a quantitative analysis of the drugs was reversible error?

At the preliminary examination, the district judge was concerned with a possible issue, *viz.,* the quantity of drugs actually sold or dispensed. The court stated:

"The court is concerned about this issue that is now pending before the court relative to this very issue. I might help defense counsel in this regard * * * . [T]he Court of Appeals rejected that, we follow the rule that any amount of heroin was sufficient for the establishment of a crime."

When defense counsel requested that the court instruct the state lab employee to conduct a quantitative analysis of the drugs, the court said:

"I see no reason why we cannot call your attention to it, to find out what the circuit court would do on that case; because I am satisfied it will be raised at the time of trial. So, for that reason, *I would request* that you do proceed with the quantitative analysis on Exhibit I and II; and, may the record reflect that you re-open both envelopes for the purpose of that analysis with concurrence of defense counsel." (Emphasis supplied.)

A preliminary examination is in no sense a trial to determine guilt or innocence. It serves the limited purpose of a factual presentation from which the examining magistrate determines whether a crime has been committed and whether there is probable cause to believe that the accused committed it. *People v McLean,* 230 Mich 423, 425;

202 NW 1005, 1006 (1925); *People v Zaleski,* 375 Mich 71, 81–82; 133 NW2d 175, 180–181 (1965); *People v Hatt,* 384 Mich 302, 306; 181 NW2d 912, 914 (1970). The examining magistrate's determination as to probable cause will not be disturbed unless an abuse of discretion is found. *People v Medley,* 339 Mich 486, 492–493; 64 NW2d 708, 712 (1954); *People v Stirewalt,* 16 Mich App 343; 167 NW2d 779 (1969); *People v Brocato,* 17 Mich App 277, 283; 169 NW2d 483, 485 (1969). "It is not the function of the circuit court to second-guess the district court. The findings of the examining magistrate are to be set aside only when there is an abuse of discretion." *People v Randall,* 42 Mich App 187, 193; 201 NW2d 292, 295–296 (1972).

The manner in which the preliminary examination is conducted is within the sound discretion of the examining magistrate. *People ex rel Ingham County Prosecutor v East Lansing Municipal Judge,* 42 Mich App 32, 37–38; 201 NW2d 318, 322 (1972). The magistrate is not merely an impartial observer, he has the power and responsibility to control the proceedings, to see that evidence is presented within the general bounds of competency, relevancy, and materiality. *People ex rel Ingham County Prosecutor, supra,* p 39; 201 NW2d 323.

The circuit court acquires jurisdiction upon the filing of a proper return by the magistrate before whom the defendant has either been examined or waived examination. *People v Curtis,* 389 Mich 698, 707; 209 NW2d 243, 247–248 (1973); *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974). In the present case, the requested analysis was not performed. Defense counsel objected in the following fashion:

"Your Honor, may I interpose a further objection?

Now the court, and I have the transcript here, did order him to give specific scientific proof in this regard. This witness candidly said he did not do it because he did not have time. I don't submit that he maliciously did not do it, but he did not do it in any time, and I should not be punished and my subject jeopardized and subjected to a guess on his part particularly in the light of the fact he could have done better had he taken the time to do it. If you saddle me with the responsibility of taking a guess, there is no purpose in the court ordering him to—."

The trial court answered: *"[Interposing]:* I am not imposing any burden on you. I didn't realize the district court could direct how to try a lawsuit".

In *People v Havey,* 11 Mich App 555, 558; 161 NW2d 785, 787 (1968), this Court stated: "A magistrate's authority is limited to binding over to circuit court the criminally accused who waive examination or who have become implicated in a crime by a finding of probable cause".

The question of the power and authority of the examining magistrate on this issue is explained in the case of *People v Sherrod,* 32 Mich App 183, 186; 188 NW2d 221, 222 (1971), where the district court ordered defense counsel to notify the prosecutor within ten days as to the date, time and place of the alleged offense. On appeal, this Court wrote: *"Assuming* that the district court had authority * * * that court lost jurisdiction to enforce its order upon the filing of its return to the circuit court".[2] (Emphasis supplied.) See, also, *In re El-*

---

[2] While it may have been within the discretion of the district court to order an analysis of the drugs, it is unnecessary to so determine. We find that by the court's clear words, it intended only a request that the analysis be performed. Taken in its proper context, the exchange shows clearly that the district court was attempting to assist the parties and the court as to a possible defense. This is further underscored by the district court's statement that:

"The other hurdle that is left for the court to cross is that I am not going to go into, and that is a quantitative argument. I am leaving that up, if necessary, to a higher court to address itself to."

*liott,* 315 Mich 662, 675; 24 NW2d 528, 533 (1946). Here we find a request only and the district court lost jurisdiction upon filing of the return.

## II

Whether the defendant was entrapped as a matter of law?

Blackstone admitted that on the day of the transaction here in question, he called the defendant at least three times. He called to purchase narcotics from him. He "attempted to set up a buy of any quantity of heroin * * * up to $2000". Further, Blackstone was introduced to the defendant as the cooperator Pohl's boyfriend, which, in fact, was untrue. Blackstone admitted that on the occasion of his first meeting with the defendant he stood by and allowed the cooperator to use a drug which appeared to be heroin. He admitted that he had some question as to the possibility of the cooperator's overdosing on that drug. The defendant asserted that, at that time, he saw Blackstone "doing up", *i.e.,* "put some dope up his nose". Blackstone had had transactions with the defendant at least once and possibly twice before. Blackstone admitted that he made no attempt to arrest the defendant on any prior occasion.

The parties have briefed this case on the basis of the recent Supreme Court decision in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). In *Turner* the Supreme Court sets out an objective standard from which to view the defense of entrapment. The Court rejected the "creative activity" approach and the defendant's predisposition as a factor for consideration, and accepted Justice Stewart's dissenting opinion in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973). We are faced with determining if *Turner* is

prospective or retroactive in effect. The *Turner* case was decided in September of 1973 and the conviction here in question was had almost a year to the day prior thereto.[3]

In *People v Ruppuhn,* 25 Mich App 62, 65–66; 180 NW2d 900, 901–902 (1970), Judge R. B. Burns, of this Court, wrote:

"The United States Supreme Court has given retroactive effect to its decisions where the integrity of the fact-finding process itself was in question. *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963); 93 ALR2d 733 (right to counsel at trial); *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908; 1 ALR3d 1205 (1964)(involuntary confessions inadmissible); and *Roberts v Russell,* 392 US 293; 88 S Ct 1921; 20 L Ed 2d 1100 (1968) (retroactive application of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 [1968], in which admission of codefendant's extrajudicial confession against other codefendant was held to violate the right of confrontation).

"The United States Supreme Court did not give retroactive effect to its decisions where such rulings would seriously disrupt the administration of the criminal laws. In *Johnson v New Jersey,* 384 US 719; 86 S Ct 1772; 16 L Ed 2d 882 (1966), the Court refused to apply *Miranda and Escobedo* retroactively. In *Stovall v Denno* [388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967)], the Court refused to apply *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and held *Wade* was to apply only to confrontations after the date of the *Wade* ruling because 'today's rulings were not foreshadowed'."

See, also, *People v Whisenant,* 21 Mich App 518; 522–523; 175 NW2d 560, 562 (1970). The key factors which have been taken into account in determining the effective date of a new rule of law are (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the

---

[3] *Turner* was decided September 18, 1973, and the jury returned its verdict in the present case on September 19, 1972.

administration of justice. *People v Hampton,* 384 Mich 669, 674; 187 NW2d 404, 405 (1971). See, also, *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), and *Tehan v United States ex rel Shott,* 382 US 406; 86 S Ct 459; 15 L Ed 2d 453 (1966).

There is a large measure of judicial discretion involved in deciding the time from which a new principle of law is to be deemed controlling. *People v Whisenant, supra,* pp 521–522; 175 NW2d at 561–562. Notwithstanding this discretion, in light of the fact that the Supreme Court has not, as of this date, manifested its determination that the *Turner* decision should be applied retroactively, we are constrained to hold that it shall apply prospectively only. It would appear from the fact that the jury returned a verdict of guilty as charged that they found that the defendant had not been entrapped. Beyond this, the fact that the defendant admitted that a prior transaction had taken place could well have led the jury to believe that the defendant was predisposed to commit this offense.

We hold that until the Supreme Court clearly mandates that *Turner* is to be applied retroactively, we must approach this on the basis of the standards which were applicable prior to *Turner.* To do otherwise would have a highly detrimental effect on the administration of justice. This seriously disruptive effect predisposes a prospective application, in a fashion not dissimilar to the United States Supreme Court's refusal to apply *Miranda* and *Escobedo* retroactively.[4]

Affirmed.

All concurred.

---

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966); *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964).