## PEOPLE v JONES

1. EVIDENCE—RES GESTAE—FACTS—PRINCIPAL FACTS—PROPER EFFECT.

   What is part of the res gestae in a legal action must be largely determined in each case by the particular facts and circumstances incident thereto, but included in the res gestae are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect.

2. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECUTOR'S DUTY—DIRECT EVIDENCE—CUMULATIVE EVIDENCE—UNNECESSARY TESTIMONY.

   A prosecutor who chooses to put in evidence showing the negotiation and sale prior to a delivery of heroin cannot then be heard to argue that he need not produce other witnesses to that event because those facts and circumstances are no part of the res gestae; but, the duty of the prosecuting attorney to call all eyewitnesses or witnesses present at the transaction, who can give direct evidence on any material branch of it, is excused where such testimony would be merely cumulative, or where proof of the fact about which such witness can testify is unnecessary.

3. CRIMINAL LAW—SUPPRESSION OF EVIDENCE—CROSS-EXAMINATION—PROSECUTORS—BURDEN OF PROOF.

   The law seeks to protect an accused against suppression of evidence favorable to him and to give him the benefit of cross-examination; therefore, a prosecutor may not select a part of a transaction to make out his case against a criminal defendant while leaving to the defendant the proof of the other part.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 708 *et seq.*

[3] 21 Am Jur 2d, Criminal Law § 225.

   Suppression of evidence by prosecution in criminal case as vitiating conviction. 33 ALR2d 1421.

[4] 21 Am Jur 2d, Criminal Law §§ 222, 309–317.

[5] 58 Am Jur, Witnesses § 706 *et seq.*

[6] 21 Am Jur 2d, Criminal Law §§ 143–145.

4. Attorney and Client—Criminal Law—Conflict of Interest—
   Right to Counsel—Prejudice—Actual Prejudice.

   A conflict of interest on the part of a defense attorney may
   deprive a defendant of his right to counsel but such will not be
   the case unless the interests of two defendants, represented by
   the same counsel, so conflict with each other that prejudice
   results; to warrant reversal, the prejudice shown must be
   actual, not merely speculative, and this rule applies *a fortiori*
   where one counsel represents two defendants in separate trials
   and the question is whether one defendant might be prejudiced
   if he should be called to testify at the trial of the other.

5. Witnesses—Criminal Law—Testimony of Defendant—Testi-
   mony of Arresting Officer—Rebuttal—Error—Prejudice.

   A defendant who attempts to prejudice the prosecution's case by
   claiming that he had been arrested because of a personal
   vendetta by the arresting officer must be prepared to have the
   officer tell his side of the story, and then have the trier of fact
   decide the question of credibility; any error which may result
   from the admission of such testimony of the arresting officer
   will not justify reversal without a showing of prejudice to the
   defendant.

6. Criminal Law—Entrapment—Objective Test—Subjective Test
   —Retroactivity.

   An instruction to a jury adopting the subjective test of entrap-
   ment is not reversibly erroneous where the case was tried prior
   to a Supreme Court opinion adopting the objective test of
   entrapment, since that decision has been consistently held not
   to be retroactive.

Appeal from Jackson, Gordon W. Britten, J.
Submitted April 10, 1975, at Lansing. (Docket No.
18385.) Decided October 13, 1975.

Rufus J. Jones was convicted of delivery of
heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Bruce A. Barton,*
Prosecuting Attorney, and *James M. Justin,* As-
sistant Prosecuting Attorney, for the people.

*Daniel J. Wright,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and D. E. HOLBROOK and M. F. CAVANAGH, JJ.

V. J. BRENNAN, P. J. Defendant Rufus J. Jones was convicted of delivery of heroin in violation of MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a) by a jury in Jackson County Circuit Court on August 8, 1973, and was sentenced on August 17, 1973, to 12 to 20 years in prison. He appeals as of right.

An informant, Gary Ile, arranged a meeting between defendant and Michael Robinson, an undercover agent for the Michigan State Police, to discuss the purchase of heroin. The meeting took place at Kresge's store in downtown Jackson at about 5 p.m. on March 12, 1973. Trooper Robinson was equipped with a body transmitter to enable two detectives of the Michigan State Police to monitor the conversations on a receiver in a parking lot a short distance away. During the meeting, which involved the informant, Robinson, defendant and one Zaheer Syed, a heroin purchase was negotiated, money was exchanged, and the defendant left to procure the heroin while Trooper Robinson waited. During this period one of the surveillance team, Detective Paul Whitford, left the scene leaving Detective Stuart Hampton to continue the surveillance alone. The defendant returned about 7 p.m. He and Trooper Robinson entered an automobile operated by the defendant and the defendant handed over a substance which was subsequently identified as heroin.

On or about March 20, 1973, Trooper Robinson attempted to purchase a larger quantity of heroin from the defendant. The defendant was paid $250 for material which was later determined to be a

non-controlled substance. Defendant was arrested on March 30, 1973, for the March 12, 1973, delivery. When the defendant encountered Trooper Robinson at the county jail and realized that Robinson was an undercover agent, he allegedly said, "when I get out of here you are a dead man", or words to that effect. Trooper Robinson testified that he retorted by saying that if it hadn't been for the rip off, the defendant would have been left on the street. On appeal, the defendant raises a number of issues, some of which merit discussion.

Defendant contends that it was reversible error for the trial court to refuse to indorse Detective Paul Whitford and Mr. Zaheer Syed as res gestae witnesses. Detective Whitford had assisted in the surveillance during the negotiation meeting at which Mr. Syed was present, but apparently had left prior to the actual delivery. Mr. Syed had not returned with the defendant for the delivery.

Determining what is to be considered as part of the res gestae is not without difficulty. The Michigan Supreme Court recognized the problem and discussed it at some length in *People v Kayne,* 268 Mich 186, 192; 255 NW 758 (1934).

" 'No inflexible rule has ever been and probably never can be adopted as to what is a part of the res gestae. It must be determined largely in each case by the peculiar facts and circumstances incident thereto; but it may be stated as a fixed rule that, included in the res gestae are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect.' *Chicago & Erie Ry Co v Cummings,* 24 Ind App 192, 209 (53 NE 1026, 1031)."

In the case at bar the prosecutor chose to charge the defendant with *delivery,* and contended that

the witnesses to the exchange of money some two hours prior to delivery were not res gestae witnesses. We disagree. The prosecutor could have produced proofs that the defendant came to a certain place and delivered a quantity of heroin to a certain party without going into any of the facts leading up to that transaction and made out a prima facie case of a violation of MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). Assuming without deciding that in that event the exchange of money prior to delivery of the substance would not constitute part of the res gestae, that is not the situation in the instant case. The prosecutor chose to put in evidence showing the negotiation and sale prior to delivery, and we think that he cannot then be heard to argue that he need not produce other witnesses to that event because those facts and circumstances are no part of the *res gestae.* See *People v Skowronski,* 61 Mich App 71; 232 NW2d 306 (1975). The question still remains, however, whether the court's refusal to indorse the names of the two witnesses to the negotiation and sale constitutes reversible error.

The prosecutor may not select a part of a transaction to make out his case against a criminal defendant, leaving to the defendant the proof of the other part. *Hurd v People,* 25 Mich 405, 415 (1872). This rule seeks to protect the accused against suppression of evidence favorable to him and to give him the benefit of cross-examination. *People v Raider,* 256 Mich 131, 135; 239 NW 387 (1931). It is thus well established in this state that a prosecutor must indorse and call all res gestae witnesses, but the rule has a number of exceptions. See 1 Gillespie, Michigan Criminal Law & Procedure (2d Ed), § 343, pp 416–418.

The Michigan Supreme Court reversed a conviction in *People v Castelli,* 370 Mich 147; 121 NW2d

438 (1963), for the failure of the prosecution to call a res gestae witness to a robbery, where neither the defendant nor his counsel had heard of the witness until trial, and where there was a clear indication that the witness would give testimony favorable to the defendant. The Court said:

"Inasmuch as identity of the robber was a major issue in the case, the testimony of every witness who could describe him was of utmost importance. If, as the police report indicates, the description by one not called as a witness would be in conflict with that of those who did testify, defendant was entitled to the benefit thereof before the jury. Her testimony would not have been merely cumulative." *Castelli, supra,* at 155.

In the case at bar, Detective Whitford has been indorsed originally by the prosecution, so there was no issue of the suppression of evidence. Further, there is every indication that his testimony would have been cumulative. Defendant contends that he was misled by the motion of the prosecutor to strike Whitford's name as a res gestae witness, arguing that he did not oppose the motion because, as he understood an affidavit of Whitford, the witness was out of town during the entire transaction. We note that the affidavit in question was careful to state that the witness was out of town during the *delivery,* but we can see how this could have misled defense counsel. Even if we concede that defense counsel could have been misled by the prosecutor, however, such would require that we assume that defense counsel had not contacted Detective Whitford prior to trial to find out what he knew. We are unimpressed by defendant's claim of unfair surprise.

Whatever may have been the maneuvers of prosecution or defense in this matter, it is clear

that the defendant could not have been prejudiced by the failure of the prosecution to call the two res gestae witnesses. The defendant's sole defense was entrapment, which he attempted to establish by showing repeated encounters with the informant who constantly "bugged" him about getting him some heroin. There was no dispute, however, about the facts of the March 12 meeting where the sale was negotiated. An exchange between the defendant and defense counsel on direct examination is illustrative of the posture of the defense.

"*Q.* Around what time was it that you arrived at Kresge's?

"*A.* About 5 minutes to 5.

"*Q.* Now, you heard the officers testify to the conversation. Is that what occurred?

"*A.* Yes.

"*Q.* Is your recollection of that conversation any different?

"*A.* No.

"*Q.* Who was present during that conversation?

"*A.* Me, I met Michael Robinson at that conversation. Gary Ile, and Syed, Mr. Syed.

"*Q.* Who introduced you to Mr. Robinson?

"*A.* Gary Ile.

"*Q.* And, what did he say with regard to Mr. Robinson? How did he introduce him?

"*A.* He said 'this is my partner, the one that I have been talking about.'

"*Q.* Now, tell me what happened after—tell the Ladies and Gentlemen of the Jury, what happened after the introduction.

"*A.* Me and Mr. Robinson went to talking about what was the price for a spoon of heroin in Jackson, and how much he was willing to pay for it, and then I told him that I could get him a spoon for fifty dollars, and he told me that he couldn't give me all the money, because the price was too steep, and they had just been ripped off about a week or two weeks before that. So, I poured

out $17.00 out of my pocket, and told him if he give me $33.00 I would use my 17, and bring him back the spoon of heroin.

"*Q.* Did you in fact go upon this errand?
"*A.* Yes."

It is readily apparent that this encounter does not contain any allegations which bear on defendant's theory of entrapment. Choosing to admit the details of the negotiation and sale, defendant places sole reliance on accounts leading up to that meeting to show that he was seduced into the act by the constant "bugging" of the informant. The two res gestae witnesses were not present on those occasions, and thus had nothing to contribute on that point.

" * * * it is the duty of the prosecuting attorney to call all eyewitnesses or witnesses present at the transaction, who can give direct evidence on any material branch of it, except where such testimony would be merely cumulative, or where proof of the fact about which such witness can testify to is unnecessary." 2 Gillespie, Michigan Criminal Law & Procedure (2d Ed), § 605, p 782.

In *People v Reynold,* 20 Mich App 397; 174 NW2d 25 (1969), the defendant sought reversal of his conviction on the ground that a witness had been hospitalized and was thus unavailable for testimony. There this Court said,

"From the evidence presented, it does not appear that the unavailable testimony would in any way have aided defendant's case. In all probability the testimony would only have been cumulative." *Reynold, supra,* at 399.

We think the same is true in the case at bar.

The question of the indorsement of Zaheer Syed

as a res gestae witness has one additional issue which merits discussion. Defendant contends that his defense counsel's refusal to agree to an unqualified indorsement of Mr. Syed as a res gestae witness prior to trial was motivated by the fact that counsel also represented Mr. Syed on another charge, and that this conflict of interest was prejudicial to defendant. The record does show that defense counsel was influenced by his concern for Mr. Syed's defense in a future trial when the question of Mr. Syed's indorsement was discussed. Further, when defense counsel later moved to have Mr. Syed added as a res gestae witness, the court's refusal seemed to be based in part on the court's view that Mr. Syed was not a res gestae witness at all, and partly on the fact that counsel had opposed the indorsement in a pre-trial proceeding. As indicated with regard to Detective Whitford, we think Mr. Syed was a res gestae witness. Further, we think the trial court should have dealt with the conflict of interest question raised by defense counsel. Counsel moved the court to add Mr. Syed's name and stated on the record that he had opposed this previously out of solicitude for Mr. Syed's interests, since he represented Mr. Syed in a related matter. He did not state that he had determined that Mr. Syed would not be prejudiced after all.

A conflict of interest on the part of a defense attorney may deprive a defendant of his right to counsel. *Glasser v United States,* 315 US 60, 62 S Ct 457, 86 L Ed 680 (1941), *People v Gardner,* 385 Mich 392; 189 NW2d 229 (1971). Such will not be the case, however, unless the interests of one defendant so conflict with the interests of another defendant that prejudice results. *People v Hilton,* 26 Mich App 274, 276; 182 NW2d 29 (1970). Such

prejudice is shown where evidence of a confession of one defendant is admitted into evidence in a joint trial thus implicating his co-defendant. *People v Caffray,* 62 Mich App 486; 233 NW2d 625 (1975). To warrant reversal, the prejudice shown must be actual, not merely speculative. *People v Marshall,* 53 Mich App 181, 191; 218 NW2d 847 (1974). These cases all involve joint representation in a single trial. The rule should apply *a fortiori* where there are separate trials and the question is whether one defendant might be prejudiced if he should be called to testify at the trial of the other. Such is the situation in the case at bar. We find that defendant could not have been prejudiced by the absence of testimony from Mr. Syed, so whatever error there might have been was harmless.

Defendant next contends that admission into evidence of Trooper Robinson's testimony that defendant made a threat on his life when he realized that Robinson was an undercover agent, and the subsequent use of this testimony in closing argument by the prosecutor to discredit the defendant's testimony, was reversible error. We disagree. Defendant is correct in admitting on appeal that his testimony of Robinson's statement that defendant would still be on the street if he hadn't ripped him off was immaterial, because it did not bear on the theory of entrapment. All the circumstances upon which defendant relied to show entrapment in this case occurred before the "rip off", and could not have a motive for entrapping defendant. Thus, the only purpose we can see for defense counsel going into this matter at all was to discredit Robinson. Defendant argues, in effect, that the jury should have heard about Robinson's statement to defendant, but they should not have heard the exact nature of defendant's statement

which prompted Robinson's retort. We think the trial judge was correct in ruling that he could not have half of the conversation in evidence and rule the other half inadmissible. *People v Warren,* 122 Mich 504, 522; 81 NW 360 (1899). If defendant expected to prejudice the prosecution's case by attempting to show that he had been arrested because of a personal vendetta of Trooper Robinson, he should have been prepared to have the Trooper tell his side of the story, and then have the trier of fact decide the question of credibility.

The prosecutor did, as defendant contends, make reference to this exchange a number of times. We have carefully read the record to ascertain whether improper use was made thereof. We find that there was not. The prosecutor made a vigorous and proper argument to persuade the jury that Robinson was more believable than defendant. Further, even if we found error, such would not justify reversal without a showing of prejudice to the defendant which clearly does not appear in this case. *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958), *People v Dalton,* 34 Mich App 79; 190 NW2d 735 (1971).

Defendant further contends that the trial judge erred reversibly in his instruction to the jury on entrapment. Defendant's argument in this regard is premised on our Supreme Court's decision in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). This Court has consistently held *Turner* not to be retroactive, *People v Koehler,* 54 Mich App 624; 221 NW2d 398 (1974), *People v Tinskey,* 53 Mich App 667; 220 NW2d 53 (1974), *People v Gaines,* 53 Mich App 443; 220 NW2d 76 (1974), and our Supreme Court has recently reached the same decision in *People v Auer,* 393 Mich 667; 227 NW2d 528 (1975). Defendant's trial in the case at

bar took place prior to the decisional date of *Turner.* Under the above decision, therefore, defendant is not entitled to the benefit of the new rule announced in *Turner.* We therefore find defendant's claim to be without merit.

Defendant's contention that the district court lacked jurisdiction to bind defendant over for trial in circuit court is answered by the recent decision of our Supreme Court in *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974), which decided the issue adversely to the position espoused by defendant.

We have considered defendant's other contentions of error and find them to be without merit.

Affirmed.