Bkeitel, J.
The issue in this criminal action is whether the trial court erred in charging the jury that the defendant had the burden of persuasion on the defense of entrapment.
Following a jury trial, defendant was convicted of conspiracy (Penal Law, § 105.10), and attempted grand larceny by extortion (Penal Law, §§ 110.00, 155.40), and sentenced to concurrent maximum terms of three years. The Appellate Division affirmed.
The order should be affirmed. Section 25.00 (sube). 2) of the Penal Law places on the defendant the burden of establishing affirmative defenses'; such as entrapment, by a preponderance of the evidence. No violation of constitutional due process is involved.
Defendant Laietta and his trial codefendants, Frank, Browarnik, and Klopp, attempted to “shake down ” one Friedman, president of a corporation marketing promotional games. The People’s case was based on the testimony of the victim Friedman and the arresting officer, and two tape-recorded conversations between Friedman and his tormentors.
Friedman testified that in late 1967 he discharged an employee Frank for unsatisfactory work and disloyalty. Frank, in order to be free to go into business for himself, signed a general release in favor of Friedman’s company giving up unspecified claims of approximately $5,000.
On March 7, 1968, Friedman received a telephone call from codefendant Browarnik who said, “I’m calling in regard to the Hy Frank matter. I’m from the union, and you owe the guy some money, and you better take care of it.” Friedman, frightened by the threatening tone, went to the District Attorney’s office. Arrangements were made for a meeting with Browarnik in Friedman’s automobile which was equipped with a tape recorder. At the appointed time Browarnik and defendant Laietta got into the car and engaged in conversation of which the following is a part:
*71 “ Friedman: I don’t even know what I’m doing here.
# # #
‘ ‘ Browarnik: [Frank] went over, he saw somebody * tough guys. * * * He was supposed to get nine or ten thousand dollars, he signed it away, right?
* * *
“ Friedman: He signed it away, it had nothing to do with me.
* * #
“ Laietta: It had nothing to do with you you say?
“ Friedman: No.
* * #
“Browarnik: [Friedman], is there any way to resolve this without any problems?
“ Friedman: Well, I don’t know what you mean by problems. I mean, I don’t even know what you’re talking about.
“ Laietta: Well, this guy’s gotta get some money.
* * *
“ Browarnik: We’re not putting the bull on you, if you can resolve this, it’s some nuisance money give the guy. * * *
It’s nine thousand dollars.
# * *
“ Friedman: No. No.
* # *
“ Browarnik: We’re not shaking you, remember that.
# * *
“ Laietta: I don’t want you to feel that way- And if you ever wanna.
“ Browarnik: You need a favor, you can call me.
# * *
“ Laietta: And if you need us in the future, anything.
“ Browarnik: Anything, I’ll help ya, I can help ya. * * *
And Jerry can do a few things.
“ Laietta: In every walk of life.
“ Browarnik: I don’t know your business, but I’m sure Jerry can.
“ Laietta: And listen, [Friedman] in every walk of life and in every state in the union you have more friends.”
Parts of a recorded conversation six days later without Laietta present are equally revelatory:
*72 “Browarnik: I don’t want to waste any time. I gotta get paid for my problems. There’s only one way we’ll do this. I’m not gonna press you. I’m not gonna force you to pay. I can make you pay every * * * penny, [Friedman]. Tough guy stuff.
I don’t wanna do nothing.
* * *
“ Browarnik: [I]n plain words, all I’m asking you now, you
gonna take care of us, and I’m walking away.
# * *
“Elopp: And nobody will bother you * * * You’re
giving us to forget about it.
# * *
“Browarnik: [Friedman], excuse me, let me explain one thing that * * * you gotta understand. [Frank] went to some-
body that carries a lot of weight in the underworld.
# # #
“ Friedman: [I]f I take care of somebody what happens then?
‘ * Browarnik: The end of it.
* # #
“ Friedman: And what happens if I don’t?
“ Browarnik: Well, use your own judgment, I ain’t gonna tell
you nothing. You’re a big boy. You’re a big boy.
* # #
“ Browarnik: This idiot [Frank] called some ginzo in * * * [w]ho went to see this party. * * * You see, with Italian families today * * * you see, I’m with them all my life.
The Italian families are very closely knit.
# # #
“ Browarnik: [L]ook you’re gonna get hurt if you don’t pay it, that’s it. What’s the use of talking. I mean, you want it, that’s it.”
Thus, Browarnik, Laietta, and Klopp, with ill-disguised deviousness, pressed Friedman to pay a claim released by Frank because some underworld figure required payment. They backed their demand with threats, sometimes ambiguously attributed to others, of ‘ ‘ tough guy ’ ’ tactics, emphasizing vaguely a connection with organized crime.
■Six days after the second conversation, Friedman met Browarnik and Elopp and handed over $1,000‘ to settle the demand. The *73 police officer testified that he arrested the pair shortly thereafter, finding the $1,000 in Klopp’s possession.
Laietta contended on the trial that Friedman, acting as an agent for the District Attorney, actively induced the three codefendants into attempting to extort money from him. Defendant was barely, if at all, entitled to a charge on entrapment. The record established that Browarnik made the initial contact. At the first meeting Friedman stated that he did not know what he was doing there, and that he did not owe Frank anything. It was Browarnik and Laietta who demanded money.
A charge on entrapment was given. The Trial Justice quoted from the statutes defining entrapment and the burden of proof. Then after paraphrasing other parts of the statutes and describing the meaning of a preponderance of the evidence, he stated: “ should the defendants fail to convince you by a preponderance of the evidence that they were induced, enticed and thus entrapped by the prosecution into committing the crimes charged, or that the defendants committed the crimes charged of their own free will, you will reject the defense of entrapment ” and ‘ ‘ it is only in connection with the affirmative defense of entrapment that the defendants are required to prove anything. As I have told you with respect to every other material element of the case, the People have the far more burdensome requirement of proving each element of each count beyond a reasonable doubt ”.
Defendant argues that the newly-enacted statutory defense of entrapment has its origin in Federal case law. He asserts, therefore, that New York should follow selected Federal cases which place the burden on the prosecution of establishing beyond a reasonable doubt that the defendant was not the victim of entrapment (e.g., Robison v. United States, 379 F. 2d 338, 345 [9th Cir.]; Notaro v. United States, 363 F. 2d 169, 173-176 [9th Cir.]).
The Penal Law provides: “ In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to *74 obtain snch evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Inducement or encouragement to commit an offense means active inducement or encouragement. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.” (§ 40.05, enacted as § 35.40 by L. 1965, eh. 1030, eff. Sept. 1,1967, renum. § 40.05 by L. 1968, ch. 73, § 11). The burden of proof for affirmative defenses is specified in section 25.00 (subd. 2): “ When a defense declared by statute to be an ‘ affirmative defense ’ is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence. ’ ’ The use of the phrase ‘1 burden of establishing ” makes it clear, because it could have no other meaning, that the defendant carries both the burdens of going forward with the evidence and of ultimate persuasion.
In interpreting these statutes the cited Federal cases are inapplicable. It is true that the statutory defense is based on standards established in two leading Supreme Court cases and later adopted by the Model Penal Code (Sorrells v. United States, 287 U. S. 435, 444-446; Sherman v. United States, 356 U. S. 369, 372; A. L. I. Model Penal Code, Tent. Draft No. 9 [1959], § 2.10, Comment at pp. 16-20). But the Supreme Court has not articulated its views regarding the burden of persuasion (id., see, also, Lopez v. United States, 373 U. S. 427, 433, 436-437; Notaro v. United States, 363 F. 2d 169, 174, supra). In making entrapment an affirmative defense and placing the burden of persuasion on the defendant, this State has adopted the approach of the Model Penal Code in turn based on the practice in other States (A. L. I. Model Penal Code, Tent. Draft No. 9 [1959], § 2.10, subd. [2], Comment at pp. 20-21; for the practice in other States, see, also, 29 Am. Jur. 2d, Evidence, § 156).
Concern has been expressed whether constitutional due process limitations are invaded by placing the burden of persuasion on a defendant with respect to the defense of entrapment. Thus, it has been suggested that the jury may be confused by seemingly conflicting instructions with respect to proving the defendant’s guilt of the crime beyond a reasonable doubt and his burden of persuasion on the affirmative defense. The con *75 cern raised no serious difficulty for the draftsmen of the Model Penal Code (A. L. I. Model Penal Code, Tent. Draft No. 4 [1955], § 1.13, Comments at pp. 112-114). Moreover, a closely similar issue has been before the Supreme Court. In Leland v. Oregon (343 U. S. 790, 800), it was held that there was no infirmity in a State requirement that an insanity defense be established by the defendant beyond a reasonable doubt, and it was further said that no serious problem was presented for the jury in distinguishing the instructions on the defense from those that bore on the prosecution’s main case.
True, a different problem was presented when an affirmative defense, that of alibi, was held to create an insurmountable difficulty because the defense, as well as the prosecution’s proof, turned on a principal issue in the case and the evidence on that issue, namely, defendant’s presence at the time and place of the crime. In this context, it was held that it was a violation of due process to place the burden of persuasion on the defendant (Stump v. Bennett, 398 F. 2d 111, 116, cert. den. 393 U. S. 1001). It was said, moreover, by way of rationale, that the burden was improperly placed because the defense negatived an essential element of the crime. The present case does not require this court to reach that issue, or the rather broad statement of the rationale, since entrapment is not a defense which negatives an essential element of the crime, but rather constitutes a defense in the nature of confession and avoidance.
It is old law that presumptions, burdens of going forward, and burdens of persuasion in criminal cases may be placed on defendants. To be sure, the prosecution must have first proved enough of its case, and there must be justifying reason to shift the burden either because knowledge of the facts is peculiar to the defendant or the onus is based on probabilities of wrongdoing. (Morrison v. California, 291 U. S. 82, 87-91, referring to its prior action in Morrison v. California, 288 U. S. 591, and discussing generally when it would be just or unjust to place a burden of proof on a defendant in a criminal prosecution; A. L. I. Model Penal Code, Tent. Draft No. 4 [1955], § 1.13, Comments at pp. 112-114, supra.)
Thus, as the jury was charged, it was incumbent on the defendant, the statute requiring it and constitutional limitations *76 permitting the requirement, to establish that Friedman enticed him into committing the crime, and that without such enticement defendant would not have been disposed to commit the crime (but see, for a contrary view, People v. Chambers, 56 Misc 2d 683, 686).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Scilepfi, Bergan, Jasen and Gibson concur.
Order affirmed.