**Robert T. CROSBY, Jr., Appellant,**

v.

**STATE of Delaware, Appellee.**

Supreme Court of Delaware.

July 20, 1972.

Mason E. Turner, Jr., Deputy Atty. Gen., Wilmington, for appellee.

CAREY and HERRMANN, JJ., and DUFFY, Chancellor, sitting.

CAREY, Justice.

In a jury trial in Superior Court, the appellant, Robert T. Crosby, Jr., was found guilty of selling a narcotic drug in violation of 16 Del.C. § 4725. He seeks a reversal of that conviction, alleging that the undisputed evidence clearly established entrapment, wherefore the Court below should have directed a verdict in his favor.

The State's evidence was this: On November 18, 1970, about five o'clock in the afternoon, police officer Gray, accompanied by an informant who was a young girl, went to the home of one Warner. The two of them were dressed like "bums". The girl stated to Warner that she was in need of drugs and tried to buy some from him. He insisted that he had none. After some discussion, he stated that he knew where they might be able to get some. He thereupon made a phone call to this appellant. Warner then told them to go to the appellant's home and drew a sketch of the route they should follow to get there.

The officer and the informant then went to appellant's home and knocked upon the door. The appellant's father opened the door, but immediately upon seeing the two visitors, he closed the door. As they started to leave, the appellant opened the door and invited them in. They entered, and he immediately escorted them upstairs to his bedroom. He then asked what they wanted. The girl stated that she needed something and was willing to take anything. Appellant mentioned something about "speed" (methamphetamine). After appellant changed some of his clothing, the three left in Gray's car. Appellant directed the driver to drive north to Pennsylvania. Since Gray knew he could not make an arrest in that State, he said something about preferring "skag" (heroin). Appellant then directed the officer to turn

C. Waggaman Berl, J., of Booker, Leshem, Green, Shaffer & Berl, Wilmington, for appellant.

around and go into Wilmington. They drove to a house in the city and all three went in. Appellant asked Gray how much he wanted, and the officer told him "three of four dime bags". Appellant and another man went into the kitchen and returned to the livingroom with four bags, which he handed to Gray, who gave him $40.00. The officer and the informant then left, but appellant stayed in the apartment.

Appellant's version of the episode was that Warner had told him on the phone that the girl was in bad shape and needed something very quickly; that Warner was eager to get them out of his house because of the commotion the girl was making; that Warner himself could not help them because he was somewhat ill; and that Warner asked appellant to help him out. Appellant denies that there was any talk about "speed" or going to Pennsylvania to get anything. He says they asked for "skag" and he told them he had heard of a place where it might be purchased; that they then asked him to go with them because they did not know the way to the place he mentioned. He agreed to go because the girl appeared to be in bad shape and was making considerable noise; he was afraid his father would hear her, wherefore he was eager to get them out of the house; that he would have had nothing to do with them had it not been for the girl's actions.

■ The issue of entrapment was left to the jury to determine. The appellant makes no complaint about the definition of entrapment as contained in the Court's charge; his sole complaint is that the Court refused to direct a verdict in his favor because, he contends, the State's evidence itself showed entrapment. With this contention we cannot agree. For present purposes, we will assume that appellant's evidence was sufficient to create a jury question. The evidence of the State, however, does not go that far. The jury could find that the officer and his informant did no more than give the appellant an opportunity to participate in the sale.

Appellant contends that there was no showing of a predisposition on his part. It is true that there was no showing that he had made or participated in any prior sales. On the other hand, there are unexplained elements in the State's case which would permit an inference against him on this score. He admittedly knew what they wanted before they came to his house. Why did he let them—total strangers—come into the house, especially after his father had already slammed the door in their faces, if he was unwilling to participate? Moreover, according to Gray, the couple were in the house only five or ten minutes, during part of which time appellant was changing some of his clothing. This would seem to be a very short time for the couple to have been able to entice him into doing something he was truly unwilling to do. If he were in fact afraid of what they might do to him, why did he not call for his father's assistance? After he got them out of the house, why did he not simply go back in? In short, determination of this issue was for the jury, which obviously did not believe his explanation.

The only complaint concerning the charge which is pressed in this Court has to do with the burden of proof of entrapment. The Court below placed that burden upon the defendant. This instruction was in accord with prior Superior Court practice. State v. Brown, Del.Super., 287 A.2d 400 (1972). Appellant urges that this is wrong and that the correct rule is that followed in the federal courts. This point was not raised at the trial and no exception was taken, but we consider it of sufficient importance to overlook the failure to complain at the trial. The authorities are divided on this question. See People v. Laietta, 30 N.Y.2d 68, 330 N.Y.S.2d 351, 281 N.E.2d 157 (1972); 21 Am.Jur.2d 212.

We are unaware of any authority which holds that the federal rule as to the burden of proof on this question is binding upon a state court. Appellant argues that we should adopt that rule but we are of the opinion that placing this burden upon a de-

fendant is both fair and consistent with our general law.

The defense of entrapment is a matter of confession and avoidance. In effect, it concedes the commission of the act charged, but claims that it should not be punished because of the wrongdoing of the officer.

In the case of other affirmative defenses, the burden rests upon a defendant under a long line of Delaware cases. See Quillen v. State, Del.Supr., 10 Terry 114, 110 A.2d 445 (1955); Longoria v. State, Del.Supr., 3 Storey 311, 168 A.2d 695 (1961). In our opinion, entrapment as a defense should fall into the same category as the other affirmative defenses. It is so provided in the new Delaware Criminal Code, which becomes effective next year.

We find no reversible error and accordingly affirm.