PEOPLE v SOPER

OPINION OF THE COURT

1. DRUGS AND NARCOTICS—ENTRAPMENT—TRICKERY—SUBTERFUGE.

A defendant in a trial for delivery of heroin was entrapped as a matter of law where a police officer abused the allowable processes of detection and enforcement by exploiting a childhood friendship and activating a preconceived plan by feigning addiction and making repeated requests playing on the defendant's friendship and sympathy in order to induce the otherwise innocent defendant to obtain heroin for him.

DISSENT BY DANHOF, P. J.

2. CRIMINAL LAW—ENTRAPMENT—JURIES—SUBJECTIVE TEST—PERSONS OTHERWISE INNOCENT.

*A court properly found that there was no entrapment as a matter of law and properly instructed the jury under the subjective test of entrapment where the complaint in the case in which the entrapment defense was asserted was filed prior to a Supreme Court ruling which rejected the subjective standards and which has been held to be prospective only.*

3. CRIMINAL LAW—ENTRAPMENT—QUANTUM OF PROOF—FEDERAL IMPLIED EXCEPTION.

*The quantum of proof which a prosecutor must meet under the Federal implied exception theory of entrapment to prove nonentrapment, once the defense is raised, is proof beyond a reasonable doubt.*

4. CRIMINAL LAW—ENTRAPMENT—DEFENSES—SUBJECTIVE TEST—BURDEN OF PROOF—PREPONDERANCE OF EVIDENCE.

*A trial court properly instructed the jury, in a case where the*

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 43, 46, 47.

Entrapment to commit offense with respect to narcotics law. 33 ALR2d 883.

[2–4] 21 Am Jur 2d, Criminal Law §§ 143–145.

29 Am Jur 2d, Evidence § 156.

*complaint was filed prior to a Supreme Court ruling which rejected the subjective test of entrapment, that a defendant has the burden to prove entrapment by a preponderance of evidence.*

Appeal from Recorder's Court of Detroit, John P. O'Brien, J. Submitted Division 1 October 11, 1974, at Detroit. (Docket No. 17249.) Decided January 27, 1975. Leave to appeal applied for.

George J. Soper was convicted of unlawful delivery of heroin. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Michael O. Lang,* Assistant Prosecuting Attorney, for the people.

*Thomas A. Maher,* for defendant on appeal.

Before: Danhof, P. J., and Bronson, and O'Hara,* JJ.

Bronson, J. We have reviewed the facts as accurately set forth in Judge Danhof's opinion. We also agree with Judge Danhof's statement of the law of entrapment applicable to those facts. However, after careful consideration of the facts in light of the relevant legal principles, we conclude that defendant Soper was "induced to commit" the crime of delivery of heroin, *United States v Russell,* 411 US 423, 435; 93 S Ct 1637, 1644; 36 L Ed 2d 366, 375 (1973), because the police conduct in this case constituted entrapment as a matter of law.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The only reason the police officer investigated Soper was the latter's recent release from prison and previous addiction to narcotics. The officer exploited a childhood friendship with Soper to establish personal contact, and then activated his preconceived plan to induce Soper to obtain heroin for him. In order to convince Soper that he had a serious need for heroin, he falsely maintained that he was an addict, again playing on Soper's friendship and sympathy. At first Soper hesitated, indicating that he no longer had any "connections" and probably could not find any heroin. Only after the officer again approached Soper with the same request was the heroin obtained. We find the tactics utilized in this case repugnant.

We hold that the "processes of detection and enforcement" used here were "abused by the instigation by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them". *Sorrells v United States,* 287 US 435, 448; 53 S Ct 210, 215; 77 L Ed 413, 420 (1932).

Defendant's conviction is reversed and he is discharged.

O'HARA, J., concurred.

DANHOF, P. J., *(dissenting).* I am unable to accept my colleagues' conclusion that the defendant was entrapped as a matter of law under the facts of this case. Defendant was convicted by a jury on March 12, 1973 of delivery of heroin, MCLA 335.341(1)(a); MSA 18.1070(41)(a). He was sentenced to a term of from 5 to 20 years in prison, and he appeals, raising three issues involving his defense of entrapment.

At trial the defendant took the stand and admitted the offense, choosing to rely on a defense of

entrapment. The defendant testified that he had
been a drug addict and that he had three previous
convictions for drug related offenses, but that he
ended his drug habit while in prison. His testi-
mony conformed in all significant particulars to
that of the primary prosecution witness, an under-
cover police officer.

The officer testified that while in the Detroit
Police Narcotics Bureau Office, he happened to
notice the defendant's file which was active be-
cause the defendant had been released from Jack-
son Prison less than two months before. The officer
recognized the defendant as an old boyhood friend.
He went to the defendant's house, renewed his
acquaintance and discussed their shared experi-
ences as children. The officer then brought up the
subject of drugs, told him he was an addict, and
asked the defendant to obtain heroin for him. A
future meeting was set up, and for $60 the defend-
ant gave the officer a tinfoil packet which subse-
quent tests disclosed to contain heroin.

The first and second issues raised by the defend-
ant in this appeal depend upon the application of
the recent decision in *People v Turner,* 390 Mich
7; 210 NW2d 336 (1973), to the facts in this case.
Defendant argues that the trial court erred by not
finding entrapment as a matter of law under the
test adopted in *Turner.* He also argues that the
trial court's instruction to the jury on entrapment
was erroneous because it set forth the subjective
or "creative activity" test for entrapment which
was expressly rejected in *Turner.*

This Court has considered the question of retro-
activity, holding that the effect of the decision in
*Turner* is prospective only. *People v Gaines,* 53
Mich App 443; 220 NW2d 76 (1974); *People v
Tinskey,* 53 Mich App 667; 220 NW2d 53 (1974);

*People v Koehler,* 54 Mich App 624; 221 NW2d 398 (1974). Therefore, the entrapment standard as it stood prior to *Turner* must be applied in this case. Under that standard, the trial court did not err in failing to find entrapment as a matter of law, or in its jury instruction concerning the subjective test.

Defendant's third and final issue presents the allegation that the trial court's instruction on the burden of proving entrapment was reversibly erroneous. That language to which the defendant objects is as follows:

"Now to go back to the defense of entrapment, the defendant has the burden of production of evidence in support of entrapment, having done so, he has the burden of persuading the jury, you people, the existence of facts constituting the defense by a preponderance of the evidence. He must convince you that he was entrapped by a preponderance of the evidence."

The question of the burden of proving entrapment, and the quantum of proof necessary to do so, has previously been before our Court, but has not been decided. *People v Pugh,* 48 Mich App 242; 210 NW2d 376 (1973); *People v Habel,* 50 Mich App 630; 213 NW2d 822 (1973). It should be emphasized that the discussion and holding in the case presently before us is confined to the law of entrapment as it stood prior to the sweeping changes brought about by the decision in *Turner.* Following this decision, it appears that future jury instruction on entrapment will be unnecessary. *People v Habel* (On Rehearing) 53 Mich App 399; 220 NW2d 74 (1974).

There exists a substantial divergence of opinion concerning the degree of proof sufficient to sustain a defense of entrapment. The leading authority on the burden of proof in this situation is a statement

of Judge Learned Hand in *United States v Sherman,* 200 F2d 880, 882–883 (CA 2, 1952):

"Therefore in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it."

This bifurcated conceptualization of the burden of proof has led to some confusion in those jurisdictions, like Michigan before *Turner,* which apply the subjective test. Nevertheless, some insight can be achieved by tracing the roots of the entrapment doctrine as it has been developed in the Federal and state courts.

The defense of entrapment as recognized by the United States Supreme Court has its basis "in a notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense, who was induced to commit them by the government". *United States v Russell,* 411 US 423, 435; 93 S Ct 1637, 1644; 36 L Ed 2d 366, 375 (1974). The United States Supreme Court has consistently regarded entrapment as a device fashioned to give effect to the intent of Congress. "Congress could not have intended that its statutes were to be enforced by tempting innocent persons into violations." *Sherman v United States,* 356 US 369, 372; 78 S Ct 819, 821; 2 L Ed 2d 848, 851 (1958). "We are unable to conclude that it was the intention of the Congress in enacting this statute that its processes of detection and enforcement should be abused by the instigation by governmental officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to

punish them." *Sorrells v United States,* 287 US
435, 448; 53 S Ct 210, 215; 77 L Ed 413, 420 (1932).

Under the Federal "implied exception" theory,
an entrapped defendant cannot be convicted and
punished because what he did was not a crime;
that is, he did not violate any statute because he
comes within an implied exception to that statute.
From a procedural standpoint, once the defense of
entrapment is raised, the prosecution must prove
non-entrapment because it is only by so doing that
the prosecution can prove that the defendant did
not come within the implied exception and hence
that he has committed a crime. Since application
of the statute to the defendant is an essential
element which must be proven to establish guilt, it
follows in both logic and law that the standard of
proof which must be satisfied on the issue of non-
entrapment is the same as for any other essential
element of the offense; proof beyond a reasonable
doubt. Therefore, the "Federal rule" provides that
once the issue of entrapment has been raised,
either by the defendant or in any other way, the
defendant has met his burden and thereafter the
burden is on the prosecution to disprove entrap-
ment beyond a reasonable doubt. *Notaro v United
States,* 363 F2d 169 (CA 9, 1966); *Martinez v
United States,* 373 F2d 810 (CA 10, 1967); *Pratti v
United States,* 389 F2d 660 (CA 9, 1968); *Whiting v
United States,* 321 F2d 72 (CA 1, 1963); *United
States v Martinez,* 429 F2d 971 (CA 9, 1970);
*United States v Landry,* 257 F2d 425 (CA 7, 1958),
*United States v Henry,* 417 F2d 267 (CA 2, 1969).

Another distinct basis for the defense of entrap-
ment frequently recognized in the state courts has
been articulated in the minority opinions of all
three of the aforementioned United States Su-
preme Court decisions dealing with this subject.

*Sorrells v United States, supra,* at 457; 53 S Ct at 218; 77 L Ed at 425; *Sherman v United States, supra,* at 380; 78 S Ct at 824; 2 L Ed 2d at 855; *United States v Russell, supra,* at 439, 440; 93 S Ct at 1646, 1647; 36 L Ed 2d at 378. According to this theory, entrapment is regarded as a defense not because it negates proof of an element of the crime, but because it serves to prevent the misuse of the criminal justice system by overzealous government agents. Improper police practices are discouraged and the courts are protected from becoming involved in the "prostitution of the criminal law". The entrapped defendant is, therefore, not convicted as a matter of public policy; he may be guilty of an offense, but he will not be punished because to do so would countenance "enforcement of the law by lawless means".

Thus, under the public policy rationale, establishment of the entrapment defense is not affected by proof of participation in the crime. In fact, a defendant who denies the offense is usually not permitted to rely upon the defense of entrapment. See, for example, *People v Bersine,* 48 Mich App 295; 210 NW2d 501 (1973); 61 ALR2d 677. Therefore, since the issue of whether or not the defendant committed a crime must be resolved apart from the issue of entrapment, the reasonable doubt standard of proof applicable to the former issue is not necessarily applicable to the latter issue. All of the elements of the crime may be proven beyond a reasonable doubt, and yet the defendant escapes conviction, not because he is innocent, but because the police are guilty of impermissible conduct. In order to avail himself of this defense, the defendant must assume the burden of proving that the police engaged in prohibited practices. The degree of proof which he must

provide is no more or no less than that which the law requires to establish any contested fact other than the elements of a crime, proof by a preponderance of the evidence.

Most state courts which have considered this issue have similarly concluded that the defendant has the burden of proving entrapment by a preponderance of the evidence. *Hawthorne v State,* 43 Wis 2d 82; 168 NW2d 85 (1969); *People v Moran,* 83 Cal Rptr 411; 463 P2d 763 (1970); *People v Valverde,* 246 Cal App 2d 318; 54 Cal Rptr 528 (1966), *Crosby v State,* 295 A2d 708 (Del, 1972); *People v Laietta,* 30 NY2d 68; 330 NYS2d 351; 281 NE2d 157 (1972). See also 1 Wharton's Criminal Law and Procedure, § 132 (1957, Supp 1974); LaFave & Scott, Criminal Law, p 373, § 48 (1972); ALI Model Penal Code, Entrapment § 2.13(2) (proposed official draft 1962).

Michigan has long accepted the public policy theory of entrapment. The Michigan Supreme Court in *People v Mitchell,* 298 Mich 172, 183–184; 298 NW 495 (1941), found no error in the lower court's charge to the jury that, "It is against public policy for officers of the law to induce the commission of criminal offenses". This Court in *Tomita v Tucker,* 18 Mich App 559, 563; 171 NW2d 564 (1969); *lv den,* 383 Mich 769 (1970), cited *Mitchell* and stated, "In entrapment situations, public policy precludes prosecution of the charge". More recently, in *People v Sinclair,* 387 Mich 91, 119, 120; 194 NW2d 878 (1972), Justice Swainson in his separate opinion traced the development of the defense of entrapment in Michigan and concluded that "The basis of the entrapment defense is that the methods used by the police are repugnant to fair play and justice" which are to be discouraged by refusing "to allow convictions based on entrapment".

Therefore, I would hold that under the law of entrapment as it stood in Michigan prior to the decision in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), the trial court's instruction to the jury was not reversibly erroneous, and I would affirm.