Chief Judge Breitel (concurring).
I am in complete agreement with the views expressed in the majority opinion and therefore concur in it. It seems apt, however, to add some comments respecting the salutary criminological purposes served by the development of affirmative defenses, even where the burden of proof rests on the defendant.
A preliminary caveat is indicated. It would be an abuse of affirmative defenses, as it would be of presumptions in the criminal law, if the purpose or effect were to unhinge the procedural presumption of innocence which historically and constitutionally shields one charged with crime. Indeed, a byproduct of such abuse might well be also to undermine the privilege against self incrimination by in effect forcing a defendant in a criminal action, to testify in his own behalf.
Nevertheless, although one should guard against such abuses, it may be misguised, out of excess caution, to forestall or discourage the use of affirmative defenses, where defendant may have the burden of proof but no greater than by a preponderance of the evidence. In the absence of affirmative defenses the impulse to legislators, especially in periods of concern about the rise of crime, would be to define particular crimes in unqualifiedly general terms, and leave only to sentence the adjustment between offenses of lesser and greater degree. In times when there is also a retrogressive impulse in legislation to restrain courts by mandatory sentences, the evil would be compounded.
The affirmative defense, intelligently used, permits the gradation of offenses at the earlier stages of prosecution and certainly at the trial, and thus offers the opportunity to a defendant to allege or prove, if he can, the distinction between the offense charged and the mitigáting circumstances which should ameliorate the degree or kind of offense. The instant homicide case is a good example. Absent the affirmative defense, the crime of murder or manslaughter could legislatively be defined simply to require an intent to kill, unaffected by the spontaneity with which that intent is formed or the provocative or mitigating circumstances which should legally or morally lower the grade of crime. The placing of the burden of proof on the defense, with a lower threshold, however, is fair because of defendant’s knowledge or access to the evidence other than his own on the issue. To require the prosecution to negative the "element” of mitigating circumstances is generally unfair, especially since the conclusion *306 that the negative of the circumstances is necessarily a product of definitional and therefore circular reasoning, and is easily avoided by the likely legislative practice mentioned earlier.
The problems involved and their resolution are, of course, not confined to the crimes of homicide but extend to most serious offenses and some minor ones.
In a more mature and developed criminology sophisticated distinctions should be used freely, guarding only for abuse. The goals are more appropriate definition of and sanctions for crime, and a retreat from primitive notions about crime based on a result alone or based largely on result. "A homicide is a homicide is a homicide” is not a truth of modern criminology and such a simplistic approach, which could be encouraged by making affirmative defenses unattractive to legislators, is not one to be followed.
The treatment of entrapment as an affirmative defense in the Model Penal Code is particularly illustrative of the discussion (ALI Model Penal Code, Tent Draft No. 9 [1959], § 2.10, subd 2 and Comments, at pp 14-24). The trial was followed in this State with the enactment of the new Penal Law, to introduce what had not been in this State the ameliorative entrapment defense before (see § 40.05, enacted as § 35.40 by L 1965, ch 1030, and renumbered § 40.05 by L 1968, ch 73, § 11, with the burden of proof on defendant; § 25.00, subd 2; People v Laietta, 30 NY2d 68, 73-75, cert den 407 US 923). Given the resistance in many places in the Legislature and even in the American Law Institute it is a fair conjecture that but for the affirmative defense cum burden of proof treatment, the law would not have followed this course (see Hechtman, Practice Commentaries to Penal Law, § 25.00, McKinney’s Cons Laws of NY, Book 39, at pp 62-63; ALI Model Penal Code, Tent Draft No. 4 [1955], Comments to § 1.13, at pp 108-114, especially p 113). In short, only those with a lack of historical perspective would treat the affirmative defense as a hardening of attitudes in law enforcement rather than as a civilized and sophisticated amelioration.
In sum, the appropriate use of affirmative defenses enlarges the ameliorative aspects of a statutory scheme for the punishment of crime, rather than the other way around—a shift from primitive mechanical classifications based on the bare antisocial act and its consequences, rather than on the nature of the offender and the conditions which produce some degree *307 of excuse for his conduct, the mark of an advanced criminology.