# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 67
The People &c.,
   Respondent,
  v.
Carlos L. David,
   Appellant.

Guy A. Talia, for appellant.
Lisa Gray, for respondent.
Hon. Letitia James, New York State Attorney General, intervenor.

HALLIGAN, J.:

   Defendant Carlos L. David challenges his conviction for two counts of criminal possession of a weapon in the second degree (*see* Penal Law § 265.03 [3]) on several grounds. He argues that the police recovered the handguns that gave rise to his conviction

- 1 -

during an invalid inventory search, and that Supreme Court improperly allowed prejudicial testimony at his trial. Neither argument provides grounds for reversal. David additionally argues that Penal Law § 265.03 (3) is facially unconstitutional under *New York State Rifle & Pistol Assn., Inc. v Bruen*, 142 S Ct 2111 (2022). This argument is unpreserved, and for the reasons set forth below, we do not reach it.

Late on a September evening in 2017, a Rochester Police Department officer observed David driving an SUV without its headlights on and pulled him over. David was alone in the car, which was registered to a woman who was not present. Upon learning that David possessed only a learner's permit, not a valid driver's license, and noting that David had parked partially in the bike lane, the officer decided the car had to be towed. The officer then conducted an inventory search of the vehicle and recovered two handguns and a large amount of cash.

David was charged with two counts of criminal possession of a weapon in the second degree under Penal Law § 265.03 (3). He moved to suppress the handguns as the fruit of an invalid search. At the *Dunaway*/*Mapp*/*Huntley* hearing, the officer read into the record Rochester Police Department Regulations General Order 511 (E), which provides that, "[w]hen deciding whether to tow a vehicle for safekeeping, members will take into consideration such factors as: the crime rate in the area and proximity of the operator/owner's residence, valuables in the vehicle, and whether or not another person is readily available who can operate the car." The officer testified that he decided to tow the car because it was illegally parked in a no-parking area, partially blocking the bike lane

and the flow of traffic. He also stated that he did not call the car's owner and did not realize that the address to which the car was registered was merely three blocks away.

The suppression court rejected David's argument that the officer failed to follow police department protocol by not considering alternatives to towing. The court "fully credit[ed]" the officer's testimony, holding that "[a]s the officer discovered that the defendant failed to possess a valid driver's license and his vehicle was improperly parked, he was authorized to tow the vehicle." The court further found that the officer had "appropriately towed the defendant's vehicle pursuant to the General Orders of his police department."

In advance of trial, David also moved to exclude evidence of the cash found in the vehicle on the grounds that its prejudicial nature outweighed its probative value. The People responded that the cash tended to show David's connection to the car, and therefore that he knowingly possessed the guns, and Supreme Court denied the motion. David was convicted of both counts and appealed.

The Appellate Division affirmed, reasoning that "the suppression hearing testimony established that it is the policy of the Rochester Police Department to tow a vehicle and conduct an inventory search when, following a traffic stop, there is no licensed driver present," and that because David did not have a driver's license and was the sole driver present, the officer properly decided to tow the vehicle. The Appellate Division further concluded that the record did not support an inference that the inventory search was a mere pretext to uncover incriminating evidence. After the U.S. Supreme Court decided *Bruen*, but before the Appellate Division decided David's appeal, David had moved for leave to

file a supplemental brief arguing that *Bruen* rendered Penal Law § 265.03 (3) facially unconstitutional. The Appellate Division denied that motion and did not address *Bruen*. A Judge of this Court then granted leave to appeal.

I.

We begin with David's Second Amendment challenge. On appeal, the defendant argues that the statute under which he was convicted is facially unconstitutional in light of *Bruen* because a defendant cannot be properly convicted solely on proof of the statutory elements set forth in Penal Law § 265.03 (3), which do not include the lack of a New York firearm license. He further contends that even if Penal Law § 265.03 (3) is read together with Penal Law § 265.20 (a) (3), which exempts from prosecution a person with a New York firearm license, the statutory scheme impermissibly places the burden of production to show licensure on the defendant once the People have merely shown conduct presumptively protected by the Constitution—to wit, public carry of a firearm.

Parties are generally required to preserve all claims for appellate review by raising them in the trial court, including challenges involving a criminal defendant's federal constitutional rights (*see People v Tutt*, 38 NY2d 1011 [1976]), and the constitutionality of statutes (*see e.g. People v Baumann & Sons Buses, Inc.*, 6 NY3d 404, 408 [2006]). In *People v Cabrera* (decided today), we hold that an unpreserved Second Amendment challenge to Penal Law § 265.03 (3) based on *Bruen* is unreviewable, and to the extent David likewise argues that *Bruen* renders unconstitutional New York's entire licensing regime, and in turn its statutory prohibition on criminal possession of a weapon, that challenge is unreviewable for the same reasons.

David also raises an additional claim: that his convictions violate due process by treating presumptively innocent conduct as unlawful and shifting the burden of production to David to show otherwise.  As an initial matter, we read the statutory scheme differently than the dissent does.  Because the licensure exemption is not found within the text of the relevant Penal Law provision criminalizing possession of a weapon, it presumptively operates as a "proviso that need not be pleaded but may be raised by the accused as a bar to prosecution or a defense at trial" (*People v Santana*, 7 NY3d 234, 236 [2006]; *see also id.* at 236-237 ["(E)ssential allegations are generally determined by the statute defining the crime"]; *People v Davis*, 13 NY3d 17, 31 [2009]).[1]  In contrast to the "home or place of business" exception found within the text of Penal Law § 265.02 (4), which we have construed as an element of the relevant offense (*see People v Rodriguez*, 68 NY2d 674, 675 [1986], *revg on dissenting op of Lazer, J.*, 113 AD2d 337, 343-348 [2d Dept 1985]), the licensure exemption is not found within the text of Penal Law § 265.03 (3).  Rather, the Legislature placed it within Penal Law § 265.20, alongside myriad other exemptions—including possession by a state prison warden in pursuit of official duty (Penal Law § 265.20 [a] [2]), persons employed in fulfilling defense contracts with the federal government (Penal Law § 265.20 [a] [1] [e]), and a person voluntarily surrendering a weapon (Penal Law § 265.20 [a] [1] [f])—that would not reasonably be viewed as elements

---

[1] *Hughes*, relied upon by the dissent, simply held that Section 265.03 and the licensure exemption, read together, prohibit only unlicensed possession (*People v Hughes*, 22 NY3d 44, 50 [2013]), not that lack of a license is an element of a criminal possession charge.  If *Hughes* had indeed held that lack of a license is an element of the crime charged here, that would be all the more reason to require preservation of this argument.

of the various offenses criminalizing possession of a weapon. "[C]ommon sense and reasonable pleading" suggest the Legislature did not intend that the People plead and prove every one of these exemptions (*Davis*, 13 NY3d at 31), and no party has pointed us to any sign of legislative intent to treat the licensure exemption alone as the sole element among that list.

Turning to the impact of *Bruen*, the Supreme Court's decision effected a substantial change in Second Amendment jurisprudence, as we note in *Cabrera* (decided today), and David raises meaningful questions about New York's statutory scheme in its wake (*cf. Commonwealth v Guardado*, 491 Mass 666, 206 NE3d 512 [Apr 13, 2023] [holding that Massachusetts statute prohibiting public possession of loaded firearms but allowing affirmative licensure defense violated due process because lack of license must be essential element of crime under *Bruen*]). But the "mode of proceedings" exception set forth in *People v Patterson*, 39 NY2d 288 (1976), on which David relies, does not provide a basis for reaching his unpreserved arguments.

This Court has recognized a "very narrow" exception to the preservation requirement for a "tightly circumscribed class" of nonwaivable errors (*People v Kelly*, 5 NY3d 116, 119-120 [2005]), that go to "the essential validity of the proceedings conducted below" (*Patterson*, 39 NY2d at 295-296). In *Patterson*, this Court reviewed an unpreserved due process challenge to a statute that placed the entire burden of proof—both the burden of production and the ultimate burden of persuasion (*see Schaffer ex rel. Schaffer v Weast*, 546 US 49, 56 [2005])—on the defendant to establish extreme emotional disturbance as an affirmative defense to murder. We reasoned that "[i]f the burden of proof

was improperly placed upon the defendant, [the] defendant was deprived of a properly conducted trial, the distribution of the burden of persuasion being just as significant as the proper composition of the jury" (*id.* at 296). And we applied an exception to the need for a timely objection "to ensure that criminal trials are conducted in accordance with the mode of procedure mandated by Constitution and statute" (*id*. at 295-296).

This case does not fit within the mode of proceedings exception outlined in *Patterson*. First, our cases following *Patterson* have confirmed that the "mode of proceedings" exception does not categorically exempt from preservation all claims related to the shifting of burdens at trial. To the contrary, we have repeatedly concluded that errors that fall short of expressly shifting the burden of persuasion to the defendant must be timely preserved (*see e.g. People v Thomas*, 50 NY2d 467, 472 [1980] [no mode of proceedings exception for unpreserved argument that a permissive presumption on intent violated due process to the extent it could reasonably be interpreted by the jury to shift the burden of proof to defendant]; *People v McKenzie*, 67 NY2d 695, 697 [1986] [no mode of proceedings exception for unpreserved argument that statutory presumptions regarding possession and intent in Penal Law § 265.15 (3) and (4) unconstitutionally shifted the burden of proof to defendant because "the charge contained no express burden-shifting language"]; *People v Gray*, 86 NY2d 10, 21-22 [1995] [no mode of proceedings exception for unpreserved argument that failure to charge jury that People must prove knowledge of the weight of contraband possessed lessened burden of proof]; *People v Easley*, 42 NY2d 50, 58-59 [1977] [no mode of proceedings exception for unpreserved argument that burden

of proving knowledge of alleged victim's mental defect was unconstitutionally placed upon defendant, where the defendant failed to place the affirmative defense in issue]).

This line of cases fully accords with *Hankerson v North Carolina*, in which the U.S. Supreme Court endorsed applying a state law preservation bar even where the defendant was impermissibly forced to bear the burden of persuasion to negate an essential element (*see* 432 US 233, 244 n 8 [1977] ["The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error (in the burden of proof)"]).

Second, Penal Law § 265.03 (3) differs from the statute in *Patterson* in that it shifts only the burden of production to the defendant. Critically, the burden of persuasion on licensure always remains with the People (*see* Penal Law § 25.00 [1]). That distinction matters for due process purposes (*see Mullaney v Wilbur*, 421 US 684, 702 n 31 [1975] ["Shifting the burden of persuasion to the defendant obviously places an even greater strain upon him (than shifting the burden of production) since he no longer need only present some evidence with respect to the fact at issue; he must affirmatively establish that fact"]). Because the shift in the burden of production alone effectuated by Penal Law § 265.03 (3) does not impinge on the validity of a proceeding to the same extent as requiring the defendant to bear the entire burden of proof, *Patterson*'s preservation reasoning does not have full force here.[2]

---

[2] We do not decide whether shifting the burden of production to the defendant could amount to a due process violation (*cf.* dissenting op at 4-5). We note only that doing so

Third, unlike the pure mode of procedure question in *Patterson*, David's argument rests on asserted violations of both the Second Amendment and due process—a hybrid question of substance and procedure. As noted, New York's law places only the burden of production on a defendant to show licensure, a practice that is generally permissible (*see e.g. People v Laietta*, 30 NY2d 68, 74-76 [1972] [no violation of constitutional due process in placing even the burden of persuasion on the defendant with respect to the defense of entrapment]; *Mullaney*, 421 US at 701 n 28 ["Many States do require the defendant to show that there is 'some evidence' indicating that (a defense is applicable) before requiring the prosecution to (disprove the defense) beyond a reasonable doubt. Nothing in this opinion is intended to affect that requirement"] [internal citations omitted]). David's contrary argument rests squarely on *Bruen*; he contends that in light of *Bruen*, the Second Amendment makes lack of licensure an essential element of the offense and bars a shift in the burden of production on that point. For the same reasons that we do not reach the *Bruen*-based Second Amendment arguments absent preservation (*see People v Cabrera* [decided today]), we reach the same conclusion regarding David's due process challenge, which is firmly grounded in his understanding of the scope of the Second Amendment.

Nor is David's challenge reviewable on the grounds that the accusatory instrument was facially defective in failing to plead all constitutionally required elements, thereby depriving Supreme Court of jurisdiction. In such circumstances, we have found that preservation is required (*see Baumann & Sons Buses*, 6 NY3d at 408 ["For this Court to

does not raise concerns of the same magnitude as shifting the burden of persuasion on an element of a crime.

consider a constitutional claim in the guise of an argument that the accusatory instrument is facially insufficient would permit an end run around the parties' obligation to preserve constitutional claims before the trial court"]).  The cases David relies upon to argue otherwise are inapposite (*see People v Martinez*, 81 NY2d 810, 812 [1993] [conviction of crime that is a legal impossibility]; *People v Tannenbaum*, 23 NY2d 753 [1968] [conviction under substantive criminal statute that U.S. Supreme Court had expressly held was unconstitutional]).

David raises significant questions about whether, in light of *Bruen*, lack of licensure is an essential element of New York's criminal possession of a weapon offense and must therefore be charged to the jury in all cases.  But because he did not preserve these arguments, they must await another day.

## II.

Turning to David's evidentiary challenges, law enforcement officers may conduct an inventory search of an impounded vehicle without a warrant, so long as the search is conducted according to "reasonable police regulations relating to inventory procedures administered in good faith" (*Colorado v Bertine*, 479 US 367, 374 [1987]; *see also People v Gomez*, 13 NY3d 6, 10 [2009] ["(A)n inventory search should be conducted pursuant to an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably"] [internal quotation marks omitted]).  David contends that under the Rochester Police Department's protocol, the officer was required to ask where the vehicle's owner lived and whether she was available

to retrieve the car but did not do so, and that the suppression court accordingly erred by denying his suppression motion.

David's argument rests on an overly expansive reading of General Order 511 (E), which requires officers to consider alternatives to towing, including whether there is another possible driver and the proximity of the owner/operator's residence. That provision does not impose on officers an affirmative duty to inquire whether any alternatives exist, beyond those that are raised for their consideration or are otherwise apparent. While David points to several facts that could have weighed against impoundment if made known to the officer during the stop, the record is undisputed that David did not inform the officer of these facts at the time. The officer did not realize that the owner's residence was nearby; nor did David tell him. Moreover, David could not legally drive the car away from the scene, and there was no other licensed driver present. In some circumstances, an officer may need to explore alternatives to impoundment, but here, the decision to tow the vehicle was not in contravention of the police department's policy (*see People v Walker*, 20 NY3d 122, 125 [2012] ["where no facts were brought to the (officer's) attention to show that impounding would be unnecessary," officers are not required to take further steps, even where a potential alternative driver is present on the scene]).

Relying on *People v Gomez*, 13 NY3d 6 (2009), David also argues that it was particularly unreasonable to impound and then search his vehicle given that he was pulled over for a minor driving infraction, the car was not stolen nor was his license revoked, he was not under the influence of alcohol or drugs, and the car was parked only because the

police had pulled him over and only partially impeded the bike lane. But David does not contest that he could not legally drive the car and there was no other authorized and capable driver present. Accordingly, the decision to tow was not unreasonable, and thus neither was the search.

Finally, David argues that Supreme Court abused its discretion in allowing testimony related to the cash found in the same compartment as the guns because the evidence was more prejudicial than it was probative. "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact" (*People v Frumusa*, 29 NY3d 364, 371 [2017] [internal quotation marks omitted]), but trial courts retain discretion to "exclude relevant evidence if its probative value is outweighed by . . . undue prejudice to the opposing party" (*People v Primo,* 96 NY2d 351, 355 [2001]). The People argue that the presence of the cash in the same location as the guns made it more likely that David knew the guns were present. While the connection between these two facts may be tenuous and the probative value thus limited, the risk of prejudice was low given that the testimony about the cash was brief and accompanied the general list of items found in the inventory search; for that reason, any error in allowing the testimony was harmless.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting):

The lack of a license to possess a weapon is an essential element of New York's criminal weapons possession laws. That was made clear in *People v Hughes* (22 NY3d 44, 50 [2013]). As with the elements of any other crime, the prosecution bears the burden to establish this element beyond a reasonable doubt. Defendant Carlos L. David's conviction should be reversed and a new trial ordered because the jury was not charged on this element and made no findings that defendant possessed an unlicensed weapon. Defendant thus need not rely on the United States Supreme Court majority's holding in *New York State Rifle & Pistol Assn., Inc. v Bruen* (142 S Ct 2111, 2118 [2022]) that the Second Amendment

- 1 -

guarantees the right to publicly carry a weapon for self-defense, but whether under *Hughes* or *Bruen*, the outcome is the same.

                                                    I.

A jury convicted defendant of two counts of criminal possession of a weapon in the second degree under Penal Law § 265.03 (3). That section provides that:

> "A person is guilty of criminal possession of a weapon in the second degree when [they] possess[es] any loaded firearm. Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business" (Penal Law § 265.03 [3]).

As relevant to my discussion, the court instructed the jury on the elements of the charged offenses as follows:

> "In order for you to find the defendant guilty of these crimes, the People are required to prove from all the evidence in the case beyond a reasonable doubt each of the following four elements: That on or about September 5, 2017, in the County of Monroe, the defendant, Carlos David, possessed a firearm. The first count is a .45 auto, second count is a 9—millimeter; two, that the defendant did so knowingly; three, that the firearm was loaded and operable; and four, that such possession did not take place in the defendant's home or place of business."

During the pendency of his appeal at the Appellate Division, a majority of the United States Supreme Court in *Bruen* struck down the "proper cause" requirement of New York State's firearm licensing regime. The Appellate Division did not address the impact of *Bruen* on defendant's appeal (*People v David*, 209 AD3d 1276 [4th Dept 2022]).

On appeal to us, defendant claims that he was convicted for the constitutionally-protected conduct of possessing a handgun in public. According to defendant, Penal Law § 265.03 (3) is facially unconstitutional because it does not expressly state unlicensed possession as an element of the crime. He also claims that the statute presumes guilt for innocent conduct and violates due process by shifting the burden to a defendant to justify public possession.

For the reasons I discuss in *People v Garcia*, decided today, defendant's Second Amendment challenges are preserved.[1] I now turn to the merits of those claims.

## II.

### Facial Challenge

Defendant's facial challenge is without merit. According to defendant, the Penal Law criminalizes what the *Bruen* majority held to be protected by the Second Amendment—possession of a loaded handgun in public. Defendant correctly summarizes the majority's holding in *Bruen*, but defendant's facial challenge is based on an erroneous interpretation of our law. Defendant incorrectly asserts that Penal Law 265.20 (a) (3) requires that the prosecution establish only four elements to prove guilt: 1) a defendant's knowing, 2) possession, 3) of a loaded and operable firearm, 4) outside their home or place of business. Even if the text of the Penal Law could be read as defendant claims, our decisional law makes clear that the lack of licensure is an essential element of criminal

---

[1] I have no occasion to opine on whether defendant's claims also fall within the mode-of-proceedings exception to preservation.

weapon possession. In *People v Hughes* we declared that "New York's criminal weapon possession laws prohibit only *unlicensed* possession of handguns. A person who has a valid, applicable license for [their] handgun commits no crime" (22 NY3d 44, 50 [2013], citing Penal Law § 265.20 [a] [3]). Thus, New York does not criminalize the mere possession of a handgun in public.

III.

Burden Shifting on the Licensure Element

Defendant further asserts that, notwithstanding *Hughes*, section 265.03 (3) does not prohibit only unlicensed possession because the gun license exemption is set forth in a different section, Penal Law § 265.20 (a) (3). As such, the statutory scheme presumes public possession is unlawful and the licensure exemption is a defense for which a defendant must carry the initial burden of production. Having thus framed this permutation of his constitutional claim, defendant contends that because the *Bruen* majority held that gun possession in public is lawful, the statute works an unconstitutional shifting of the burden of proof to defendant to establish his innocence (*In re Winship*, 397 US 358, 364 [1970] [shifting the burden of persuasion to a criminal defendant violates due process]). The majority similarly opines, relying in part on *People v Santana* (7 NY3d 234, 236 [2006]), that there is a licensure exemption "not found within the text of Penal Law § 265.03 (3)" and thus it constitutes a "proviso" that may be raised by the defendant as an ordinary defense which the prosecution must *disprove* beyond a reasonable doubt (majority op at 5). That characterization is deployed in support of the majority's conclusion that

defendant's challenge is unpreserved, in part, because shifting the burden of production is not a due process violation so long as the burden of persuasion remains with the prosecution. The majority's conclusion is not supported by law or practice.

First, *Santana* was decided seven years before *Hughes* declared that only unlicensed weapons possession is a crime under New York law and thus *Hughes*, not *Santana*, properly instructs on the essential elements of firearms possession (*Santana*, 7 NY3d at 236). Contrary to the majority's view, under *Hughes*, the lack of a license is an essential element of the crime which must be established by the prosecution by clear and convincing evidence (22 NY3d at 50 [2013] [stating the law prohibits *only* "*unlicensed* possession"]).

Second, the majority misunderstands *Santana* and how we distinguish elements from defenses. *Santana* involved a jurisdictional deficiency challenge to the prosecutor's information on the ground that the second-degree criminal contempt charge under Penal Law § 215.50 (3) failed to state that the crime did not arise out of a labor dispute, an exception found in the Judiciary Law and cross referenced in Penal Law § 215.50 (3). The Court stated that "[l]egislative intent to create an exception has generally been found when the language of exclusion is contained entirely within a Penal Law provision" (*Santana* at 237). But that is the case here; the licensure exclusion is set forth in the Penal Law. It is not found in a completely different statute, as was the case in *Santana*. The fact that the licensure exclusion is located in a different section of the Penal Law is irrelevant to the analysis as further is supported by *Santana*'s citation to the 1986 decision in *People v Rodriguez* (*id*. at 237, citing 68 NY2d 674, 675 [1986]). The *Rodriguez* Court adopted the dissenting opinion in the Appellate Division, which observed that a defendant may be

required to carry the burden of proof in asserting a legislatively defined affirmative defense or negating a rebuttable presumption (*People v Rodriguez*, 113 AD2d 337, 343 [2d Dept 1985] [Lazer, J., dissenting]). The dissent explained that absent such legislative guidance courts considered whether the information was "uniquely in the possession of the defendant" but after the adoption of the revised Penal Law in 1965, this approach was limited to "offenses defined outside the Penal Law" (*id*. at 345, citing e.g., *People v D'Amato*, 12 AD2d 439 [1961] [General Business Law § 343]; *People v Baur*, 102 Misc 2d 971 [1980] [Vehicle and Traffic Law § 1180 (b); § 1104 (a); § 1110 (a)]). And in *Rodriguez*, because the offense was "found within the Penal Law"—like "any true statutory exception setting forth a material element of a crime found in the Penal Law"—"the People must bear the burden of introduction unless it has been classified as a defense by the Legislature" (*id.* at 345).

The majority here concludes that the statutory scheme shifts only the burden of production to the defendant (majority op at 8). However, this ignores that a defendant meets the burden of production by establishing that they have a valid license and thus they essentially must prove that they are engaged in constitutionally protected conduct. In other words, a defendant must persuade the fact finder that they are innocent of the crime of unlicensed possession of a weapon. As a consequence, the prosecution is placed in a reflexive posture, needing only to respond to the licensure issue if the defendant raises it. This view of the statutory framework absolves the prosecution of establishing the only crime under New York's law: *unlicensed* firearm possession. It is nothing short of a shifting of the burden, in contravention of *Hughes*.

The burden shifting is also constitutionally impermissible under the *Bruen* majority holding. That view is shared by the Supreme Judicial Court of Massachusetts which recently invalidated an almost identical statutory scheme to that in New York, on the basis that, post-*Bruen*, lack of licensure is required to be an essential element of the crime of public possession of a firearm and cannot be an affirmative defense (*Commonwealth v Guardado*, 491 Mass 666, 667 [Mass 2023]).[2] In *Guardado,* the Court found that defendant's Second Amendment and due process rights were violated because the jury was not instructed that lack of licensure was an element and thus the defendant was convicted of solely possessing a firearm in public which *Bruen* held was constitutionally protected conduct (*id*. at 692; quoting *Bruen* at 2135).[3] As I discuss, this same rationale applies to the New York statute in question, Penal Law § 265.03 (3).

It is undisputed that the court did not charge the jury that in order to find defendant guilty of Penal Law § 265.20 (a) (3) it must find that the prosecution established by clear

---

[2] In a subsequent decision, the court rejected a double jeopardy challenge on the ground that since *Guardado I* had held licensure was not an essential element at the time of the defendant's trial, on retrial "the Commonwealth is not being given a second bite at the proverbial apple to supply evidence that it was required to muster in the earlier trial" *Commonwealth v Guardado* (*Guardado II*) (No SJC-13315, 2023 WL 7029883 [Mass Oct 23, 2023]).

[3] As the concurrence in *Guardado* notes, requiring proof of licensure as an essential element need not be particularly burdensome for the prosecution, and may be proven in a variety of ways, including by establishing a lack of evidence of licensure records (*Commonwealth v Guardado*, 491 Mass. 666, 694, 206 NE3d 512, 541 [2023] [Lowy, J., concurring]). Notably, under New York law, "[e]very licensee while carrying a pistol or revolver shall have on [their] person a license to carry the same" and "[u]pon demand, the license shall be exhibited for inspection to any peace officer, who is acting pursuant to [their] special duties, or police officer" (Penal Law § 400.00 [8]) . A defendant's failure to do so may provide an inference of a lack of licensure.

and convincing evidence that defendant did not have a license to possess the handguns in public. Therefore, defendant is entitled to a new trial where the jury is properly instructed on all the elements of criminal weapons possession.[4]

Order affirmed. Opinion by Judge Halligan. Chief Judge Wilson and Judges Garcia, Singas, Cannataro and Troutman concur. Judge Rivera dissents in an opinion.

Decided November 21, 2023

---

[4] I agree with the majority that defendant's challenges to the vehicle inventory search and admission of certain trial testimony are without merit.